**In re Delmer Lee FROST, Sr. a/k/a Delmer L. Frost, Edith Pearl Frost, d/b/a Frost Trash Hauling.**

No. 82–4296.

United States District Court,
D. Kansas.

March 8, 1985.

Jim J. Marquez, U.S. Atty., Karen Humphreys, Asst. U.S. Atty., Topeka, Kan., Glen R. Dawson, Trial Atty., Dept. of Justice, Tax Division, Washington, D.C., for plaintiffs.

Larry E. Schneider, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

Debtors, Delmer Lee Frost, Sr. and Edith Pearl Frost d/b/a Frost Trash Hauling, filed their petition under Chapter 13 of the Bankruptcy Code on July 31, 1981. Debtors' business involved hauling trash in the Topeka, Kansas area. The debtors' first amended plan was confirmed by the bankruptcy court on July 30, 1982. The United States Internal Revenue Service (IRS) appeals from that confirmation and raises a number of issues. The court has heard oral argument on this appeal and is now prepared to rule.

The IRS filed claims in the debtors' bankruptcy proceeding in the total amount of $77,279.14. It asserted a secured claim of $53,391.01. The debtors' Chapter 13 petition and schedules showed the total value of their property as $36,414.32. The amount asserted by the IRS as secured claims presents the primary basis for the disputes in this case.

The issues designated on appeal by the IRS are: (1) whether the debtors' trash hauling routes have an ascertainable value; (2) whether the debtors can designate which liens are to be treated as secured when the value of debtors' assets is less than the total amount of the IRS tax liens; (3) whether a ten percent interest rate on secured claims satisfies the "present value" concept of 11 U.S.C. § 1325(A)(5)(B)(ii); (4) whether payment of only one percent of the general unsecured debts satisfies the "good faith" test of 11 U.S.C. § 1325(a)(3); (5) whether, after discharge, the IRS can collect post-petition interest accrued on debtors' priority and unsecured tax claims; and (6) whether the income tax debt incurred by debtor for the 1981 tax year is, in total, an administrative expense of the estate when the bankruptcy petition was filed on July 31, 1981.

At oral argument, the IRS withdrew the sixth issue from the court's consideration. In addition, the debtors acknowledged that the fourth issue raised by the IRS needed to be remanded to the bankruptcy court for application of a recent decision of the Tenth Circuit, *In re Flygare*, 709 F.2d 1344 (10th Cir.1983). The court agrees that the bankruptcy court needs to reexamine its earlier decision on the fourth issue in light of *Flygare*. Therefore, the court shall not discuss either of these two issues in this opinion.

ISSUE NO. 1

The IRS contends that the bankruptcy court erred in not including the value of the debtors' trash hauling routes in the total

value of the debtors' estate. Both parties agree that the trash hauling routes are property of the debtors' estate but they disagree as to the value to be placed on them.

The bankruptcy court held a hearing on the issue of the valuation to be assigned to the trash hauling routes. At the hearing, the court heard the testimony of Ray Cunningham, a trash hauler, regarding the value of trash hauling routes. No other witnesses testified. Mr. Cunningham testified that the routes definitely have value as an intangible asset. He further stated that there were several factors which impacted on the value of a trash hauling route including the gross profits from the business, the geography of the route, the customers' names and bookkeeping records, the condition of the trash containers and the location of the route. Based upon these factors, Mr. Cunningham valued the debtors' trash hauling routes at from $15,000 to $25,000. Mr. Cunningham, however, was unable to testify as to what the routes would bring at a forced sale or at a voluntary sale if no covenant to compete accompanied the transfer. In its order, the bankruptcy court concluded as follows:

> Based on the facts of this case the Court believes that in arriving at the value of the trash hauling route it must take into consideration that the instant sale would be a forced sale, the instant debtor would not promise to refrain from competing, and that the intangible asset is not an entity such as a corporation, or the good will of that entity. When the Court asked Mr. Cunningham the value of the trash route taking into account these factors, he was unable to place a value on the route.
>
> Therefore although the trash route may have some value, under the factors the Court believes are relevant, no value has been shown by the IRS. Therefore, the Court holds the debtor's trash hauling route has no ascertainable value.

The IRS contends that the bankruptcy court erred in applying a "forced sale" value to this property. The IRS argues that the bankruptcy court ignored the fact that the debtors were not going to sell or otherwise dispose of their trash hauling business but were going to continue to operate it. The IRS suggests that the debtors' trash hauling routes should be valued as a "going concern." The debtors contend that the bankruptcy court properly resolved this issue. The debtors assert that the bankruptcy court correctly applied a "forced sale" value based on the circumstances of this case. They argue that since no evidence was presented as to the "forced sale" value of the trash hauling routes then the court could only conclude that the routes had no ascertainable value.

11 U.S.C. § 506(a) provides the only statutory guidance given on valuing property under the Bankruptcy Code. It provides in pertinent part:

> Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

■ The legislative history of § 506(a) is discussed in *Barash v. Public Finance Corp.*, 658 F.2d 504, 512 (7th Cir.1981), as follows:

> The legislative history of § 506(a) indicated that no fixed formula exists for establishing the value of collateral. Congress did not necessarily contemplate the use of forced sale or liquidation value; nor is fair market value always appropriate. "Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case." H.R. Rep. No. 95–595, *supra,* at 356, 5 U.S. Code Cong. & Admin.News at 6312. Value should be determined by the purpose of the valuation and the proposed disposition or use of the property. S.Rep. No. 95–989, *supra,* at 68, 5 U.S.Code Cong. & Admin.News at 5854.

Thus, the courts have been provided with little guidance in deciding the value of collateral under § 506. The focus of § 506 is directed at (1) the purpose of the valuation

and (2) the proposed disposition or use of the property. Here, since this is a Chapter 13 proceeding, the purpose of the valuation was to define the extent of the protection or benefits to be afforded the IRS. As to the use of the property, it was the intention of the debtors to continue to use the trash routes in their business.

■ After carefully considering the circumstances of this case, we agree with the IRS that the bankruptcy court overlooked the debtors' proposed use of the property in reaching a determination of the value to be placed on the trash hauling routes. The application by the bankruptcy court of a "forced sale" value to a situation where retention and use by the debtors of the property was proposed was improper. *See In re Davis*, 14 B.R. 226, 228 (Bkrtcy.D.Me. 1981); *In re Cohen*, 13 B.R. 350, 353 (Bkrtcy.E.D.N.Y.1981); *In re Crockett*, 3 B.R. 365, 367 (Bkrtcy.N.D.Ill.1980). The rationale for this conclusion is succinctly stated in *In re Crockett, supra,* as follows:

> Under a Chapter 13 plan the secured claim should be valued with due regard to the value of the property to the estate. "[T]he proposed disposition or use of such property" (Sec. 506(a)) in the instant case is for the debtors' retention and use. Therefore, the debtors cannot eat with the hounds and run with the hares. Seeking retention of the property, they cannot insist on liquidation values to be paid to the creditor in installments.

3 B.R. at 367.

■ If retention and use by the debtor of the collateral is proposed, § 506(a) envisions a valuation premised on a simulated conversion of the collateral into cash in the most commercially reasonable manner practicable under the circumstances. *In re Davis, supra.* Here, it would be proper for the bankruptcy court to value the trash hauling routes based on a commercially reasonable disposition which would include a covenant not to compete. *See 3 Collier on Bankruptcy* § 506.04, p. 506–24 (15th ed. 1979).

In sum, we find that the bankruptcy court erred when it applied a "forced sale" value to the debtors' trash hauling routes. This case shall be remanded to the bankruptcy court for a determination of the value of the property based on what it would bring if sold in a commercially reasonable manner.

ISSUE NO. 2

■ Both parties are agreed that the law is settled that a taxpayer can direct how voluntary payments are to be applied, but cannot direct how involuntary payments are to be applied. *National Bank of the Commonwealth v. Mechanics' National Bank,* 94 U.S. 437, 4 Otto 437, 24 L.Ed. 176 (1876); *O'Dell v. United States,* 326 F.2d 451 (10th Cir.1964). The question presented here is whether payments made by Chapter 13 debtors in bankruptcy are voluntary or not. The bankruptcy court held that payments made in a Chapter 13 plan are voluntary because a Chapter 13 petition can only be voluntarily filed by the debtor and can be dismissed at any time without notice to the creditors. 19 B.R. 804. It is the position of the IRS that the payments made by the debtors pursuant to their Chapter 13 plan are involuntary payments because of the involvement of the court. The debtors contend that such payments under Chapter 13 are voluntary for the reasons stated by the bankruptcy court.

In *Amos v. Commissioner,* 47 T.C. 65, 69 (1966), the definition of an involuntary payment of federal taxes is set forth:

> An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.

In *Muntwyler v. United States,* 703 F.2d 1030 (7th Cir.1983), the Seventh Circuit examined *Amos* and other cases on this issue and held that the presence of court action or administrative action resulting in the actual seizure of a taxpayer's property rendered a taxpayer's payment involuntary. The Court made clear that it was the involvement of the court and not the type of

bankruptcy which makes payments by a debtor involuntary.

■ We agree with the conclusion reached in *Muntwyler* and thus we find that the bankruptcy court erred in this case. In order to determine whether a payment to the IRS is voluntary or involuntary, it must be determined whether or not the payment was received through court or administrative action which resulted in an actual seizure of the property or money. The instant bankruptcy proceeding filed by the debtors is a legal action in which the IRS has filed a claim for delinquent taxes. The payments to be made by the debtors are under the bankruptcy court's jurisdiction and are made pursuant to a plan which must comply with the requirements of the bankruptcy code. Thus, we conclude that the payments made by the debtors to the IRS are not voluntary and the IRS has the right to allocate the payments as it sees fit.

ISSUE NO. 3

The IRS contends that the bankruptcy court used the wrong rate in determining present value under 11 U.S.C. § 1325 in assessing interest on its secured claim. The bankruptcy court ordered that the IRS would receive a discount factor of ten percent on its secured tax claim. The IRS argues first that the bankruptcy court should have used the interest rate provided by 26 U.S.C. § 6621. Alternatively, the IRS asserts that it is entitled to the treasury bill rate established in *In re Jewell*, 25 B.R. 44 (Bkrtcy.D.Kan.1982).

■ This court has previously considered the issue of whether the IRS is entitled to the interest rate set forth in 26 U.S.C. § 6621. In *In re Frost*, No. 82–4298 (D.Kan., unpublished, 11/26/83), we rejected this argument. The court finds nothing in the arguments of the IRS in the instant case that persuades us that our previous opinion was incorrect. Thus, the court finds that this argument is without merit.

■ The court does find that the alternative position of the IRS has merit. In August, 1982, in *In re Jewell, supra,* the bankruptcy court held that the discount rate for creditors under 11 U.S.C. § 1325 would thereafter be based on the equivalent coupon yield rate of 52 week treasury bills auctioned once every four weeks. The court held that the new discount rate applied to creditors who had objected to the ten percent rate prior to *Jewell* and to creditors of debtors filing petitions on or after September 2, 1982. Since the IRS in this case objected to the ten percent rate prior to *Jewell* and raised the issue in our court then it is entitled to receive the treasury bill rate established in *Jewell.* Therefore, the bankruptcy court's ruling on this issue shall be reversed. On remand, the bankruptcy court should apply the new interest rate.

ISSUE NO. 5

■ The IRS argues that the bankruptcy court erred in holding that the IRS could not collect post-petition interest from the debtors after discharge. The IRS contends that either this matter was not ripe for decision or that the conclusion reached by the bankruptcy court was contrary to law. We find that the matter was not ripe. This issue is one that will not come up until the debtors' bankruptcy is closed. Thus, the decision of the bankruptcy court was premature and must be reversed.

CONCLUSION

Based upon the foregoing, the orders of the bankruptcy court in this case shall be reversed and this case shall be remanded for proceedings consistent with this opinion.

IT IS SO ORDERED.