**In re LIFESCAPE, INC., Debtor.**

**Bankruptcy No. 83 B 04334 C.**

United States Bankruptcy Court,
D. Colorado.

Nov. 1, 1985.

Steven L. Zimmerman, Zimmerman & Schwartz, P.C., Denver, Colo., for debtor.

Robert N. Miller, U.S. Atty., and Colleen L. Conlin, Denver, Colo., for the United States.

## ORDER REGARDING APPLICATION OF PAYMENTS TO THE INTERNAL REVENUE SERVICE

PATRICIA ANN CLARK, Bankruptcy Judge.

The sole issue before this Court is whether payments to the Internal Revenue Service (IRS) under a confirmed Chapter 11 plan are involuntary payments which the IRS may apply as it sees fit. The debtor, Lifescape, Ltd., asserts that the payments to the IRS are voluntary because they are to be made merely as a response to the filing of a claim. On the other hand, the United States of America urges that the payments are involuntary as they are made pursuant to Court action, i.e., the bankruptcy proceeding.

Lifescape is in the business of providing landscaping design and construction services. On September 23, 1983, it filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The United States filed an objection to the debtor's second amended plan of reorganization based upon the debtor's attempt to allocate IRS payments to its trust fund liability and a hearing was held on August 23, 1985. This Court took the matter under advisement pending the submission of briefs by both parties on the single issue in controversy. Both parties agreed, however, that the plan should be confirmed in the interim and that the decision on this issue would be incorporated into the confirmed plan. Consequently, on October 11, 1985, the debtor's third amended plan of reorganization was confirmed.

The law is clear that a taxpayer making voluntary payments to the IRS has the right to direct application of those payments to whatever type of liability it chooses. *O'Dell v. United States*, 326 F.2d 451 (10th Cir.1964); *Muntwyler v. United States*, 703 F.2d 1030 (7th Cir.1983). Conversely, when a payment is involuntary, IRS policy permits the agency to allocate the payments as it sees fit. Rev.Ruling 79–284, 1979–2 C.B. 83; *United States v. DeBeradinis*, 395 F.Supp. 944 (D.Conn. 1975). In the present matter, the debtor wishes to designate the application of its payments to the delinquent trust fund taxes first and the non-trust fund taxes secondarily. This method of allocation benefits the debtor's principals since they are ultimately liable for delinquent trust fund taxes but not the non-trust fund taxes. Hence the debtor maintains that if the payments are deemed involuntary and the IRS applies the payments to the non-trust fund taxes, the debtor's principals would be left with the same tax liability whether they reorganized or not. Therefore, there might be no incentive for them to reorganize the company and all the debtor's creditors would be adversely affected.

This Court acknowledges that there is conflicting precedent as to whether payments to the IRS pursuant to a bankruptcy proceeding are involuntary. The pertinent cases do, however, reach a common ground in their definition of "involuntary payment" but proceed to diverge from there. Rather than surveying all the resulting permutations, this Court will focus its review only on the cases that bear the closest factual similarity to the present matter and render its decision accordingly.

To begin with, the definition of involuntary payment most generally utilized can be found in *Amos v. Commissioner*, 47 T.C. 65 (1966), wherein the court held:

> An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.

The Seventh Circuit Court of Appeals in *Muntwyler v. United States*, 703 F.2d 1030 (1983) held that a payment is involuntary when made pursuant to judicial action or some form of administrative seizure like a

levy, judicial order, execution, or judicial sale. In *Muntwyler* the debtor company ceased doing business and assigned all of its assets to a trustee for the benefit of its creditors. The trustee was authorized to sell the company's interest in the assigned assets, and pay the claims of the company's creditors. Among these creditors was the IRS which accepted a check from the trustee but refused to honor the attendant directions for application of the money to the debtor's trust fund liability. The court determined that the payment was voluntary and stated:

> The distinction between a voluntary and involuntary payment in *Amos* and all the other cases is not made on the basis of the presence of administrative action alone, *but rather the presence of court action or administrative action resulting in an actual seizure of property or money as in a levy.* No authorities support the proposition that a payment is involuntary whenever an agency takes even the slightest action to collect taxes, such as filing a claim or, as appears to be a logical extension of the Government's position, telephoning or writing the taxpayer to inform him of taxes due.

*Muntwyler*, 703 F.2d at 1033 (emphasis added).

The definitions set forth in *Amos* and *Muntwyler* make it apparent that resolution of the present issue hinges upon whether a Chapter 11 proceeding constitutes sufficient "judicial action" to render payment, made pursuant to the Chapter 11 plan, involuntary. Two recent opinions have determined that payments made to the IRS pursuant to a confirmed Chapter 11 plan are voluntary. First, the case *In re A & B Heating & Air Conditioning*, 13 BCD 571, 53 B.R. 54 (Bankr.M.D.Fla.1985) involved facts almost identical to the present matter. The case concerned a Chapter 11 debtor whose plan sought to allocate payments to the IRS so that the trust fund portion of the claim was credited first until it was paid in full. The IRS objected, asserting that such payments were involuntary and that it could allocate the funds as it saw fit. The court in *A & B*

surveyed applicable precedent and distinguished payments made pursuant to court ordered settlement of claims, liquidations outside of a confirmed plan, and judicial sales, from payments made pursuant to a Chapter 11 plan for reorganization. Cases involving the former type of payments require more active judicial involvement than the latter type in which a court's sole concern is to determine if the proposed plan of reorganization meets the standard set forth in 11 U.S.C. § 1129. The court looked at the definition of "voluntary payment" set forth in *Muntwyler* and stated:

> Court involvement in the context of a Chapter 11 reorganization case is not the type which results in seizure of property or money as in a levy. Unlike a taxpayer faced with a government instituted collection proceeding which may lead ultimately to levy upon the taxpayer's assets, a Chapter 11 debtor enjoys great latitude in how and if a plan is proposed and thus how and when the IRS will be paid. § 1129 requires only that a plan provide for payment of pre-petition taxes over a period not to exceed 6 years from the date of assessment in order that it may be confirmed. The debtor propounding a plan has a number of options with respect to treatment of a claim by the IRS and it is the freedom afforded by these options which dictates the conclusion that payments to the IRS pursuant to a confirmed Chapter 11 plan of reorganization are voluntary.

*A & B*, 13 BCD at 572, 53 B.R. 54.

This Court finds that rationale in *A & B* to be persuasive and adopts its result.

The court in *In re Franklin Press, Inc.*, 52 B.R. 151 (Bankr.D.Fla.1985) also found that payment pursuant to a Chapter 11 plan was voluntary, although it focused upon the nature of funding for the reorganization rather than on the level of court involvement. The court noted that a reorganization funded by infusion of outside capital either provided or guaranteed by a third party establishes voluntariness, in contrast to a debtor in liquidation who has

no real options. Although the reorganization plan submitted by Lifescape does not include funding or personal guarantees by a third party, neither is it a liquidation. Rather the voluntariness is established by the latitude enjoyed by the debtor in how and when the IRS will be paid within the purview of Section 1129. Further, the mere filing of a claim in a Chapter 11 proceeding is clearly not the type of court action envisioned in *Amos* and *Muntwyler* since it does not approach the "actual seizure of money or property as in a levy."

It should be noted that the court in *In re Frost*, 47 B.R. 961 (D.Kan.1985) achieved the opposite result in a Chapter 13 case. There the court held:

> The payments to be made by the debtors are under the bankruptcy court's jurisdiction and are made pursuant to a plan which must comply with the requirements of the bankruptcy code. Thus we conclude that the payments made by the debtors to the IRS are not voluntary and the IRS has the right to allocate the payments as it sees fit.

*Frost*, 47 B.R. at 965.

Although the court in *Frost* maintains it is in agreement with the conclusion reached in *Muntwyler*, the results hardly seem consistent. The court in *Muntwyler* concluded that the payments made to the IRS were voluntary because "there was no levy, judicial order, execution, or judicial sale; rather, there was a mere filing of a claim." *Muntwyler*, 703 F.2d at 1033. In both *Frost* and the instant matter the IRS has done nothing other than merely filing a claim. The fact that payments are made pursuant to a plan which must comply with the requirements of the Bankruptcy Code does not rise to a level of court action equivalent to a levy, judicial order, execution or judicial sale. While a different result may be reached where the government files an involuntary petition for bankruptcy against a debtor (*see Muntwyler*, 703 F.2d at 1034 (n. 2)), this Court finds that the present facts and circumstances compel it to conclude that the payments and circumstances compel it to conclude that the pay-

ments made pursuant to its plan for reorganization are voluntary.

ORDERED that the debtor can direct the Internal Revenue Service to allocate the payments it makes through its confirmed Chapter 11 plan for reorganization to whatever type of liability it chooses.