In re ENERGY RESOURCES CO., INC., Energy Operators, Inc., Oilfield Innovations, Inc., Oilfield Resources Co., Inc. (Texas), Oilfield Resources Co., Inc. (Delaware), Debtors.

Bankruptcy Nos. 83–00060–JG, 83–00128–JG to 83–00131–JG.

United States Bankruptcy Court, D. Massachusetts.

April 7, 1986.

Guy B. Moss, Widett, Slater & Goldman, P.C., Boston, Mass., for William A. Browner, movant.

Joseph Ackerstein, Asst. U.S. Atty., Boston, Mass., Paul D. Barker, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for IRS.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

This matter is before the Court on the motion of William A. Browner, Liquidation Trustee (the "Trustee") of the Erco Liquidation Trust (the "Trust") established under the Debtors' Third Amended Plan of Reorganization (the "Plan"). The Trustee seeks an order directing the Internal Revenue Service ("IRS") to apply payments under the Plan as designated by him. The IRS opposes the Trustee's motion. Both parties have briefed their respective positions. The facts are undisputed.

## FACTS

On January 17, 1983 and January 31, 1983, the debtors, Energy Resources Co., Inc. and its affiliates, commenced proceedings under Chapter 11 of the Bankruptcy Code. By order dated September 5, 1984, this Court confirmed the debtors' Plan pursuant to which the Trust was established. The purpose of the Trust, as the IRS notes in its brief, is to liquidate all remaining assets of the debtors for the benefit of their creditors.

Pursuant to Article 5 of the Plan, claims of taxing authorities, including the IRS, are to be paid in full either upon such terms as the debtors and the taxing authorities may agree or in accordance with section 1129(a)(9)(C) of the Code in four equal annual payments commencing one year after the Confirmation Date (as defined in the Plan and ultimately determined to be October 1, 1984).[1] The annual payments include a repayment of principal together with interest at the statutory rate established by the Secretary of the Treasury pursuant to 26 U.S.C. § 6621. In addition to the annual payments, the Plan provides that the Trustee has the right to prepay tax claims at anytime.

On November 6, 1985, the Trustee made payments to the IRS in accordance with the Plan in the amounts of $203,516.54, representing the Plan payment then due, and $78,000, representing a partial prepayment of the outstanding claim. In so doing, the Trustee designated "that this payment be applied to the trust fund portion of taxes, first for the period ended June 30, 1982 with the excess, if any, applied to the trust fund portion of the taxes for the period ended September 30, 1982."[2]

1. The Court's order of September 5, 1984 indicates that:

    By agreement of the Debtors, Article 5 of the Plan shall be deemed modified to provide that all Finally Allowed tax claims covered thereby shall be paid over a period of four years from the Confirmation Date, as defined in the Plan, and not from the Consummation Date, and that, in any event, the Debtors and thereafter the Trustees, as defined in the Plan, shall use their best effort consistent with the payment of priority claims and administrative expenses and consistent with their duties, including their expenses under the Erco Liquidation Trust Agreement, to prepay all Finally Allowed tax claims, in whole or in part, prior to the four anniversary dates described in Article 5 of the Plan.

2. The court in *Muntwyler v. United States,* 703 F.2d 1030 (7th Cir.1983) described trust fund taxes as follows:

    The Internal Revenue Code directs employers to deduct and withhold a tax upon wages paid. 26 U.S.C. § 3401(a). The withheld taxes are deemed to be held in a special fund in

The IRS refused to acknowledge the Trustee's designation of the payment. In a letter dated November 7, 1985, its Bankruptcy Advisor advised the Trustee that "[u]nless such direction of payment is given in a court order, the United States reserves the right to apply such payment which is a distribution of a bankruptcy proceeding to its maximum benefit." As a result of the refusal of the IRS to honor his designation, the Trustee moved for an order directing the IRS to apply Plan payments as designated by the Trustee. In his motion, the Trustee argued *inter alia:*

1) that the ability of the Trustee to direct payments is necessary for the Trustee to maximize the benefit to the estate from such payments;

2) that the IRS will not be harmed by the designation, since the Plan provides for the payment in full of the IRS' claim, plus interest;

3) that by directing payments, the Trustee is able to implement a settlement agreement with Richard Rosen, a former officer, whereby $14,000 was immediately released to the Trust and the Trustee agreed to cooperate in designating tax payments which would forestall personal liability assessed by the IRS against the former officers from affecting them and their ability to cooperate with the Trustee; and

4) that payments made under a plan of reorganization pursuant to 11 U.S.C. § 1129(a)(9)(C) are voluntary and, therefore, entitled to be designated.

In its response to the Trustee's motion, the IRS focused on the Trustee's final argument, asserting that payments made to the United States pursuant to a Chapter 11 plan are "involuntary" and the manner of their application is in the sole discretion of the United States. The question then presented for the Court is whether, in fact, tax payments made pursuant to a confirmed Chapter 11 plan of reorganization are voluntary or involuntary.

trust for the United States, *id.* § 7501(a), and accordingly every person required to collect and pay over such a tax (including an officer of the corporation ..., *id.* § 6671(b)) is per-

## DISCUSSION

■ The starting point for any discussion is the general rule that a taxpayer who makes a "voluntary" tax payment to the IRS may designate, at the time of payment, the manner of allocation of such payment among tax, penalty and interest, *Muntwyler v. United States,* 703 F.2d 1030 (7th Cir.1983); *O'Dell v. United States,* 326 F.2d 451 (10th Cir.1964), whereas a taxpayer who makes an "involuntary" payment may not designate the manner of its allocation, the IRS being free to apply such payment to maximize the amount of assessed tax that may be collected, *United States v. DeBeradinis,* 395 F.Supp. 944 (D.Conn. 1975), *aff'd,* 538 F.2d 315 (2d Cir.1976); *United States v. Augspurger,* 508 F.Supp. 327 (W.D.N.Y.1981).

Courts have adopted the United States Tax Court's definition of an involuntary payment set forth in *Amos v. Commissioner,* 47 T.C. 65 (1966). It provides:

An involuntary payment of federal taxes means any payment received by agents of the United States as a result of a distraint or levy from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.

*Id.* at 69. For example, the United States Court of Appeals for the Seventh Circuit stated:

The distinction between a voluntary and involuntary payment in *Amos* and all the other cases is not made on the basis of the presence of administrative action alone, but rather the presence of court action or administrative action resulting in an actual *seizure* of property or money as in a levy. No authorities support the proposition that a payment is involuntary whenever an agency takes even the slightest action to collect taxes, such as filing a claim or, as appears to be a logical extension of the Government's po-

sonally liable for the full amount of the tax not paid, *id.* § 6672.
*Id.* at 1032.

sition, telephoning or writing the taxpayer to inform him of taxes due.

*Muntwyler*, 703 F.2d at 1033.[3]

Although courts are in agreement as to the definition of "involuntary" payment, partly because of dictum in *Muntwyler*,[4] they diverge from there, leading to conflicting precedent as to whether payments to the IRS pursuant to a bankruptcy proceeding are involuntary. *Cf. In re Lifescape, Inc.*, 54 B.R. 526, 527 (Bankr.D.Colo.1985). However, recent decisions are in agreement that the mere filing of a claim in a Chapter 11 proceeding and the confirmation of a plan of reorganization do not constitute sufficient judicial action to render payment made pursuant to a Chapter 11 plan involuntary. *In re Lifescape, Inc.*, 54 B.R. 526 (Bankr.D.Colo.1985); *In re A & B Heating & Air Conditioning, Inc.*, 53 B.R. 54 (Bankr.M.D.Fla.1985); *In re Franklin Press, Inc.*, 52 B.R. 151 (Bankr. D.Fla.1985); *accord In re Hartley Plumbing Company, Inc.*, 32 B.R. 8 (Bankr.M.D. Ala.1983); *cf. Hineline v. Household Finance Corp.*, 57 B.R. 248 (Bankr.N.D.Ohio 1986).

The courts in the *In re Lifescape, Inc.* and *In re A & B Heating & Air Conditioning, Inc.* cases, both of which involved Chapter 11 debtors seeking to allocate payments to the IRS so that the trust fund portion of the IRS' claim would be credited first until paid in full, stressed the options a debtor has under section 1129 of the Code and the nature of the court's involvement. In a rationale specifically adopted by the court in *In re Lifescape, Inc.*, the court in *In re A & B Heating & Air Conditioning Co., Inc.* stated:

> Court involvement in the context of a Chapter 11 reorganization case is not the type which results in seizure of property or money as in a levy. Unlike a taxpayer faced with a government instituted collection proceeding which may lead ultimately to levy upon the taxpayer's assets, a Chapter 11 debtor enjoys great latitude in how and if a plan is proposed and thus how and when the IRS will be paid. § 1129 requires only that a plan provide for payment of pre-petition taxes over a period not to exceed 6 years from the date of assessment in order that it may be confirmed. The debtor propounding a plan has a number of options with respect to treatment of a claim by the IRS and *it is the freedom afforded by these options which dictates the conclusion that payments to the IRS pursuant to a confirmed Chapter 11 plan of reorganization are voluntary.*

53 B.R. at 57 (emphasis supplied).

Likewise, the court in *In re Franklin Press, Inc.* found that payment made pursuant to a Chapter 11 plan was voluntary. In that case, the reorganization was funded by the infusion of outside capital provided or guaranteed by a third party. The court held that this established voluntariness since the third party was not subject to the court's control, in contrast to a debtor in liquidation without real options. Significantly, the Plan in the instant case and the tax payments at issue were made possible,

---

3. In *Muntwyler*, a corporation which was delinquent in paying its federal withholding taxes entered into a common law assignment to a trustee for the benefit of creditors. The IRS filed a claim with the trustee. When the trustee sent monies to the IRS, instructing that payments be applied to the trust fund portion of the corporate tax liability so that the 100% penalty assessment against the responsible officer would be partially satisfied, the IRS refused to follow his instructions. The responsible officer then filed suit seeking a refund from the IRS. The district court ruled that trustee's payment to the IRS was voluntary.

4. For example, the court in footnote two indicated:

> The Government might have been correct in its claim if the corporation had been in bankruptcy, which it was not. An assignment for the benefit of creditors is an act of bankruptcy and presumably any creditor, including the Government, could have proceeded to file an involuntary petition for bankruptcy based thereon.... We do not equate the assignment for the benefit of creditors with a formal bankruptcy proceeding.

703 F.2d at 1034 n. 2.

at least in part, by the infusion of capital from Enseco, Inc.[5]

Since the facts of the cases just discussed are similar to the ones in the instant case, the Court finds their reasoning persuasive. Furthermore, the three cases primarily relied upon by the IRS are distinguishable from the instant case and the cases just discussed. For example, *In re Frost*, 47 B.R. 961 (D.Kan.1985), unlike the instant case, did not involve section 1129. In that case, the district court, citing *Muntwyler*, reversed the bankruptcy court, which had held that payments made under a Chapter 13 plan are voluntary, because the IRS had filed a claim and because the plan had to comply with the Bankruptcy Code. The district court's reliance on the proposition that *Muntwyler* makes it clear that it is the involvement of the court and not the type of bankruptcy which makes payments by a debtor involuntary is open to serious question, *see In re Lifescape Inc.*, 54 B.R. at 529. Therefore, this Court will not follow its lead, particularly in view of the fact that section 1129 was not involved.

Likewise, in *In re Avildsen Tools and Machines, Inc.*, 40 B.R. 253 (D.C.N.D.Ill. 1984), section 1129 was not involved. In that case, both judicial orders and a judicial sale concerned the district court. Furthermore, the bankruptcy court's orders, approving and confirming the sale of the debtor's assets and authorizing the debtor to pay its liabilities from the proceeds, were issued pursuant to the Bankruptcy Act which required more court involvement in case administration than under the Code.

Finally, *In re Mister Marvins, Inc.*, 48 B.R. 279 (E.D.Mich.1984), is distinguishable because it involved a liquidation of the debtor's assets pursuant to a court order which authorized the settlement of a claim.

As the court in *In re A & B Heating & Air Conditioning, Inc.* observed, "the [c]ourt in the *Mister Marvins* case was clearly more active than is a court whose only concern is to determine if the proposed plan of reorganization meets the standards set forth in § 1129." 53 B.R. at 56.

■ The Court, therefore, concludes that the Trustee's payment to the IRS, pursuant to Article 5 of the debtors' confirmed Plan, as modified by the Court's order of September 5, 1984, was voluntary and that the Trustee had every right to direct the IRS to allocate the payments to the trust fund portion of taxes owed. The Court is persuaded not only by the recent cases unequivocally holding that payments made pursuant to section 1129 are voluntary but by common sense as well.

Historically, bankruptcy has been a statutory vehicle for aid to those in financial need. Congress, through the Bankruptcy Code, has provided bankrupts with extensive protection from their creditors and a reasonable opportunity to rehabilitate not only for their benefit but for that of the public as well.

Although the IRS' argument that it has the statutory responsibility to collect all taxes from all taxpayers who may be liable for their payment is persuasive and indeed laudible in most contexts, this Court believes that Congress has tempered that objective in the bankruptcy context, albeit in a limited fashion. The Court cannot agree with the IRS' contention that an act is involuntary simply because it occurs in a bankruptcy proceeding. Such an assertion flies in the face of Congressional concern for the rehabilitation of bankrupts, the dictionary definition of voluntary[6] and the consistent usage of the word involuntary by practitioners and scholars to distinguish

---

5. *See* Stipulation Regarding Management, Plan Funding and Asset Purchase filed March 26, 1984, Modification of Stipulation Regarding Management, Plan Funding and Asset Purchase filed April 13, 1984, this Court's Order, dated April 13, 1984, Approving and Allowing Debtor's Motion for Approval of Stipulation with Ensco, Inc., and the Debtors' Third Amended Plan of Reorganization.

6. The word voluntary is defined in Webster's New Collegiate Dictionary as "1: proceeding from the will or from one's own choice or consent 2: unconstrained by interference: self-determining. . . ."

cases commenced pursuant to 11 U.S.C. § 303 from other cases.

Furthermore, the Court is mindful that the IRS had the opportunity to voice its concern with respect to the allocation issue at the time of the confirmation hearing but did not do so.[7] Although the Plan does not state specifically that all payments to the IRS will be credited first to the trust fund portion of the IRS claim until it is paid in full, the likelihood that the Trustee would seek such a designation was foreseeable. Indeed, both the Plan and Erco Liquidation Trust Agreement repeatedly emphasize the Trustee's broad powers to act for the benefit of creditors.[8] The Court is inclined, therefore, to view the Plan and the Trustee's authorized actions pursuant to it, including the designation of tax payments, as binding. As the court observed in *In re St. Louis Freight Lines, Inc.*, 45 B.R. 546 (Bankr.E.D.Mich.1984), with respect to its jurisdiction to interpret the terms of a confirmed plan and the distribution of post-petition, pre-confirmation taxes:

> Section 1141(a) of the Code provides that confirmation binds the debtor, creditors and other parties in interest to the terms of the plan, even if a party has not accepted the plan. Case law has established the binding contractual nature of the plan. This rule has recently been used to bind the IRS and other taxing authorities to the terms of the debtor's confirmed plan. It is equally well established that an order confirming a plan is an appealable order that has *res judicata* effect *on all issues that could have been raised regarding the claim.* In other words, a party in interest ... is bound by the plan when confirmed, even if the plan ultimately provides it with less than that to which it is otherwise legally entitled.

*Id.* at 551–52 (footnote omitted, citations omitted, emphasis supplied).

In view of the foregoing, the entire record of the case, and arguments of counsel whether or not mentioned herein, the Trustee's motion is allowed and the IRS is hereby ordered to apply tax payments under the Plan as designated by the Trustee.

---

**7.** The IRS filed an objection to the debtors' Plan on August 1, 1984 on the grounds that the payment schedule would extend beyond the six years from the earliest day of assessment. It withdrew its objection in open court on the date of confirmation, September 9, 1984.

**8.** For example, Article 5.1(h) of the Trust Agreement gives the Trustee the power to "amend this agreement in any manner whatever, provided that no such amendment shall permit the Trustee to engage in any activity prohibited hereunder and provided no such amendment shall limit the Rights of Beneficiaries."