**In re John R. HINELINE,**
**Debtor, Plaintiff,**

v.

**HOUSEHOLD FINANCE CORP., et**
**al., Defendants.**

No. C 86–7153.

United States District Court,
N.D. Ohio, W.D.

Jan. 30, 1987.

John J. Hunter, Hunter & Schank, Toledo, Ohio, for debtor, plaintiff.

Verne Armstrong, Asst. U.S. Atty., Toledo, Ohio, Robin L. Greenhouse, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## OPINION and ORDER

WALINSKI, Senior District Judge.

This matter is before the Court on the United States of America's ("Government") appeal from the holding of the bankruptcy court. The appeal involves an adversary proceeding to sell free and clear of liens the real estate described in the complaint, and to determine the distribution and application of the sale proceeds.

The record in this appeal is rather sparse. However, the facts indicate that John R. Hineline, the Debtor-in-Possession ("Debtor") filed a petition on December 29, 1983. Approximately fifteen months later on April 17, 1985, the Government moved for an order dismissing the Chapter 11 proceedings or, alternatively, converting it to a case under Chapter 7. The Government based its motion, *inter alia*, on the Debtor's failure to file a Plan of Reorganization and the Debtor allegedly had accumulated post-petition tax liabilities of at least $8,600.

In the interim, the Debtor did not file a Plan of Reorganization but instead decided to liquidate the estate. The Debtor commenced an adversary proceeding on April 23, 1985, to sell free and clear of liens the property described in the complaint. On May 1, 1985, the government filed its answer, wherein it indicated that it had no objection to the sale of the real property, provided that its liens attached to the proceeds of the sale in the same manner and with the same elective priority as they attached to the property to be sold. At this juncture the Court notes the Government had filed a Notice of Federal Tax Lien on at least four occasions: February 12, 1982; September 27, 1982; August 19, 1983; and December 13, 1983.

On June 17, 1985, the bankruptcy court entered an order which authorized the Debtor to sell the real property free and clear of liens, and provided that the government's lien attach to the proceeds of the sale. Further, on June 24, 1985, in ruling on the Government's motion to dismiss the Debtor's Chapter 11 proceeding or, in the alternative, convert it to a case under Chapter 7, the bankrutpcy court stated:

there is pending a sale of certain real property and that the debtor in possession and the United States of America desire that this matter be continued for a perid of 30 days to allow the completion of the sale and the debtor in possession to file his voluntary motion to convert the proceedings under Chapter 7....[1]

(Bankruptcy Court's Order dated June 24, 1985).

Thereafter, the Debtor attempted to direct the allocation of payments made to the Government from the sale proceeds. The Government objected. By order of January 27, 1986, the bankruptcy court concluded the Chapter 11 Debtor's payments were voluntary even in the absence of a plan. *In re Hineline*, 57 B.R. 248 (Bankr.N.D. Ohio 1986).

"As a general rule, when a tax payer makes voluntary payments to the Internal Revenue Service, it has a right to direct the application of payments to whatever type of liability it chooses. However, when payments are involuntary, the policy of the Internal Revenue Service is to allocate the payments as it sees fit." *Id.* at 249–50 (citations omitted).

The issue before this Court, therefore, is whether the Debtor's payments in this Chapter 11 proceeding are voluntary. Such a finding would permit Debtor to direct the application of payments to whatever type of liability he chooses. A contrary finding, however, would permit the Internal Revenue Service to direct the payments as it deems proper.

There have been various attempts to define voluntary and involuntary. *See gener-*

---

1. The record suggests that the Debtor has yet to file his motion to convert the proceedings to a Chapter 7 case.

*ally Muntwyler v. United States,* 703 F.2d 1030 (7th Cir.1983); *Amos v. Commissioner,* 47 T.C. 65 (1966). These attempts are less than precise. Further, as the bankruptcy court noted, there is no decision from the Sixth Circuit Court of Appeals which addresses this issue.

In the context of Chapter 11 proceedings, several district and bankruptcy courts have addressed the question presently before this Court. Some courts have held that payments made in the course of a Chapter 11 proceeding are involuntary. *See Matter of Mister Marvins, Inc.,* 48 B.R. 279 (E.D. Mich.1984); *Matter of Avildsen Tools and Machines Inc.,* 40 B.R. 253 (N.D.Ill.1984). Other courts, however, have determined that such payments are voluntary because of the nature of a Chapter 11 proceeding. *See In re Energy Resource Co.,* 59 B.R. 702 (Bankr.D.Mass.1986); *In re A & B Heating & Air Conditioning, Inc.,* 53 B.R. 54 (Bankr.M.D.Fla.1985); *In re Lifescape, Inc.,* 54 B.R. 526 (Bankr.D.Colo.1985); *In re Hartley Plumbing Co.,* 32 B.R. 8 (Bankr.M.D.Ala.1983). A common thread underlying these decisions is the principle of establishing a *per se* rule that in all Chapter 11 proceedings payments are either automatically voluntary or involuntary, as the case may be. It would appear that in addressing this issue, the bankruptcy court below also sought to formulate such a standard. *Cf. In re Hineline,* 57 B.R. at 250.

■ Consideration of the nature of a Chapter 11 bankruptcy is crucial in any attempt to address the issue presented by this case.

Court involvement in the context of a Chapter 11 reorganization case is not the type which results in seizure of property or money as in a levy. Unlike a taxpayer faced with a government instituted collection proceeding which may lead ultimately to levy upon the taxpayer's assets, a Chapter 11 debtor enjoys great latitude in how and if a plan is proposed and thus how and when the I.R.S. will be paid. [Section] 1129 requires only that a plan provide for payment of pre-petition taxes over a period not to exceed 6 years

from the date of assessment in order that it may be confirmed. The debtor propounding a plan has a number of options with respect to treatment of a claim by the I.R.S. . . . .

*In re A & B Heating & Air Conditioning Co., Inc.,* 53 B.R. 54, 57 (Bankr.M.D.Fla. 1985). However, the Court recognizes that each Chapter 11 debtor finds himself in his own unique set of circumstances which may often dictate the degree of court involvement required for that particular case. The pronouncement of a *per se* or inflexible rule would not permit the court to consider individual situations.

At least one bankruptcy court has suggested that the adoption of a *per se* or inflexible rule in Chapter 11 cases should be avoided. The court stated:

Although this court is not overly sympathetic with debtors who fail to pay their trust fund taxes, it is not prepared to adopt a per se or inflexible rule that the mere filing of a Chapter 11 case and the ensuing confirmation process, standing alone, should automatically disallow (or allow) a trustee or debtor-taxpayer to allocate payments under a plan to the I.R.S. . . . . [T]he allocation question in a Chapter 11 case under the Bankruptcy Code should be left to judicial discretion to be decided on a case-by-case basis and analysis with the burden of proof being on the trustee or Chapter 11 debtor-taxpayer to demonstrate exceptional or special circumstances or equitable reasons warranting such allocation. The question should be considered in light of, inter alia, the structure and general purposes of both the internal revenue and bankruptcy laws.

*In re R & P Enterprises, Inc.,* 67 B.R. 179, 183–84 (Bankr.W.D.Tenn.1986) (footnotes omitted).

■ The *R & P Enterprises* court then enumerated certain factors to consider in determining whether the trustee/debtor should be permitted to determine the allocation of payments made in the course of a Chapter 11 proceeding. These factors include: (1) the totality of the pre- and postbankruptcy facts and circumstances; (2)

the history of the debtor; (3) the absence or existence of pre-bankruptcy collection or "enforced collections measures" of the IRS; (4) the nature and contents of a Chapter 11 plan (e.g. last resort liquidation or reorganization); (5) the presence, extent and nature of administrative and/or court action; (6) the presence of pre- or post-bankruptcy agreements between the debtor and the I.R.S.; and (7) the existence of exceptional or special circumstances or equitable reasons warranting such allocation. *Id.* at 184.

Having examined the cases relied upon by the Government and the Debtor, and the respective arguments of the parties, the Court declines their invitation to fashion a *per se* rule with regard to payments made in a Chapter 11 bankruptcy proceeding. Instead, the Court will follow the direction provided by the bankruptcy court in *In re R & P Enterprises, Inc.*, and will adopt that court's analysis and reasoning.

The bankruptcy court in the case *sub judice* did not expressly address the six factors listed above. Nor is this Court able to apply those factors because of the sparse record.

Therefore, in light of the foregoing discussion, it is

ORDERED that the judgment of the bankruptcy court is REVERSED. The case is REMANDED to the bankruptcy court with instructions to consider, in light of the factors outlined above, the Debtor's attempt to direct the allocation of payments made to the government from the sale proceeds.