**In re TECHNICAL KNOCKOUT GRAPHICS, INC., a California corporation, Debtor.**

**UNITED STATES of America, Appellant,**

v.

**TECHNICAL KNOCKOUT GRAPHICS, INC., a California corporation, Appellee.**

No. 87–5516.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 4, 1987.

Decided Nov. 30, 1987.

Gary D. Gray, Asst. Atty. Gen., Tax Div., Washington, D.C., for appellant.

Philip D. Dapeer, George & Dapeer, Los Angeles, Cal., for appellee.

Before WALLACE, HALL and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

The United States appeals from an order of the bankruptcy appellate panel, upholding a bankruptcy court decision that permitted the debtor to designate how any payments it made after filing a petition for reorganization under Chapter 11 of the Bankruptcy Code would be used to pay off various federal taxes it owed, 68 B.R. 463.

The question presented on appeal is whether a corporate debtor under a Chapter 11 reorganization can designate that tax payments made prior to confirmation of its reorganization plan shall be applied first to satisfy the corporation's trust fund liabilities, thereby protecting the corporation's principals from potential personal liability. Because we conclude that the debtor cannot designate allocation of such payments, we reverse the decision of the bankruptcy appellate panel.

## I. Facts and Proceedings Below

Technical Knockout Graphics, Inc. (TKO) defaulted on the payment of corporate income, Social Security, unemployment, and income withholding taxes during 1982 and 1983. On May 3, 1984, it filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. The government filed a proof of claim in that proceeding for $491,-634 in delinquent taxes and interest, of which approximately $290,000 was for taxes withheld from the wages of TKO's employees and interest thereon.

The Internal Revenue Code (Code) provides that taxes required to be deducted by employers from the wages paid to employees under 26 U.S.C. §§ 3102(a) and 3402(a), such as withholding and Social Security taxes, "shall be held to be a special fund in trust for the United States." 26 U.S.C. § 7501(a). The withheld funds are commonly referred to as "trust fund" taxes. *Slodov v. United States*, 436 U.S. 238, 242–43, 98 S.Ct. 1778, 1782–83, 56 L.Ed.2d 251 (1978). "Non-trust fund" taxes are those not collected from employees' wages. Under the Code, the employer is responsible for collecting, and is personally liable for, the trust fund taxes. 26 U.S.C. §§ 3102(a), (b), 3402, 3403, 6672.

If a corporation is unable to pay its trust fund taxes, the United States Treasury suffers the loss because the employees from whose wages the taxes are withheld are still credited with those amounts as if they had in fact been paid to the government. *United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1548 (11th Cir.1986); *Sorenson v. United States*, 521 F.2d 325, 328 (9th Cir.1975). Congress has imposed personal liability on any officer or employee of the employer responsible for the collection and payment of trust fund taxes who "willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat such tax or the payment thereof." 26 U.S.C. § 6672. These officers and employees are termed the "responsible persons." This is not true for non-trust fund taxes. That the funds collected under Section 6672(a) are termed a penalty "does not alter their essential character as taxes." *United States v. Sotelo*, 436 U.S. 268, 275, 98 S.Ct. 1795, 1800, 56 L.Ed.2d 275 (1978). The Internal Revenue Service (IRS) collects the amount of the unpaid trust fund taxes only once, whether collected in part or in whole from each responsible person and/or the corporate employer. *USLIFE Title Ins. Co. v. Harbison*, 784 F.2d 1238, 1243 & n. 7 (5th Cir.1986).

It is the policy of the IRS that when a taxpayer submits a "voluntary" payment, the taxpayer may designate the tax liability to which the payment will be applied. *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir.1983). However, where the payment is "involuntary," the IRS allocates the payments as it sees fit, applying the payment first to non-trust fund taxes. *Id.* Because the personal liability of the responsible persons offers an additional source for collection of trust fund taxes, this policy increases the government's opportunity to recover in full the taxes due.

Before proposing a reorganization plan, TKO filed a motion in the bankruptcy court asking that it be allowed to make payments to the IRS to reduce the trust fund portion of its pre-petition tax liability. The government opposed the motion. While the government had no objection to being paid, it objected to TKO's attempt to designate the application of payments to the trust fund portion of its liability.

The government contended that payments made by a debtor in Chapter 11 proceedings are involuntary, and thus the IRS is entitled to apply the payments as it sees fit. TKO argued that the proposed payments were voluntary, because TKO had no obligation to make any payments at all prior to filing a reorganization plan.

On March 18, 1986, the bankruptcy court granted TKO's motion, stating:

[The] debtor in possession is permitted to pay to the Internal Revenue Service for and on account of pre-filing employment taxes due and owing by debtor, such amounts in the discretion of debtor in possession by way of reduction of such pre-filing indebtedness and debtor in possession shall be permitted to designate

such payment or payments ... as it so desires, by way of application to the trust fund portion of the employment taxes due, or any other portion of the employment taxes due. The Internal Revenue Service shall accept such payments made by debtor in possession ... and shall accept and be bound by the designation by debtor in possession as to how such payments are to be applied.

The government appealed this decision to the bankruptcy appellate panel. In a split decision, the panel affirmed the bankruptcy court. The majority stated that the issue was not whether the debtor could designate its payments to the IRS, but whether the bankruptcy court had the power to order such an allocation. The majority found that Section 505 of the Bankruptcy Code, which authorizes bankruptcy courts to determine the tax liability of the debtor, included the power to allocate repayment among various liabilities. 11 U.S.C. § 505. The panel concluded that "the bankruptcy court ... determined that an equitable allocation would result from directing all of the payment to reduce the 'trust fund' portion of the tax liability."

The dissent rejected TKO's contention that pending confirmation of a reorganization plan, payments made in Chapter 11 proceedings are voluntary or may be designated at the debtor's discretion. The government timely appealed this decision.

By July 23, 1986, TKO had paid to the United States an amount equal to its trust fund liability, designating that it be applied to that liability. On September 16, 1986, the bankruptcy court confirmed TKO's reorganization plan. Under it, 100% of TKO's tax liability is to be repaid, with 11% interest, over six years.

## II. Discussion

### A. Appealability and Mootness

On July 24, 1987, this court, *sua sponte,* ordered the parties to file letter briefs discussing two issues: (1) whether the interlocutory order of the bankruptcy court was appealable, and (2) whether the confirmed reorganization plan renders this appeal moot.

### 1. *Appealability*

The court of appeals has jurisdiction over final orders, judgments, and decrees of the bankruptcy courts, whether on appeal from a district court or bankruptcy appellate panel. 28 U.S.C. § 158(d); *Mason v. Integrity Ins. Co. (In re Mason),* 709 F.2d 1313, 1315 (9th Cir.1983).

In bankruptcy proceedings, this court has cautioned against applying with "blind adherence" the rules of finality developed under the general grant of appellate jurisdiction contained in 28 U.S.C. § 1291. *Id.* at 1316. Instead, the court has adopted a pragmatic approach to deciding whether a bankruptcy court's order is final, recognizing that "certain proceedings in a bankruptcy case are so distinct and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right." *Id.* at 1317.

Thus, the court has " 'adopted a test that emphasizes the need for immediate review, rather than whether the order is technically interlocutory, in determining what is appealable as a final judgment in bankruptcy proceedings.' " *Farber v. 405 N. Bedford Dr. Corp. (In re 405 N. Bedford Dr. Corp.),* 778 F.2d 1374, 1377 (9th Cir.1985) (quoting *White v. White (In re White),* 727 F.2d 884, 885 (9th Cir.1984)). Bankruptcy orders that " 'may determine and seriously affect substantive rights' and 'cause irreparable harm to the losing party if he had to wait to appeal to the end of the bankruptcy case,' " *Mason,* 709 F.2d at 1316 (quoting R. Levin, *Bankruptcy Appeals,* 58 N.C.L. Rev. 967, 985–86 & n. 140 (1980)), are immediately appealable, if the orders "finally determine the discreet [sic] issue to which [they are] addressed." *Four Seas Center, Ltd. v. Davres, Inc. (In re Four Seas Center, Ltd.),* 754 F.2d 1416, 1418 (9th Cir. 1985). However, if " 'further proceedings in the bankruptcy court will affect the scope of the order, the order is not subject to review' " by this court under 28 U.S.C. § 158. *In re 405 N. Bedford Dr. Corp.,* 778 F.2d at 1377 (quoting *Four Seas,* 754 F.2d at 1418).

■ We hold that the bankruptcy court's decision is appealable as a final judgment. The order finally determined the discrete issue of the debtor's right to designate allocation of its tax payments. This order may seriously affect the substantive rights of the government and cause it irreparable harm. If the debtor's reorganization plan fails after the debtor has paid off some or all of the trust fund debt, the government will be precluded from proceeding against the responsible persons for the full trust fund liability to the extent of the payments that have already been made, leaving the government exposed. When the bankruptcy court entered the payment designation order, it was not certain that further proceedings of the bankruptcy court would affect the scope of that order. In fact, the court's later order affirming the reorganization plan did not affect the payment designation order.

### 2. Mootness

■ We hold that this appeal is not rendered moot by confirmation of the debtor's reorganization plan. The reorganization plan provides for complete payment of the debtor's tax liabilities, plus interest, over a six year period. However, this does not guarantee the plan will succeed, raising the possibility of injury to the IRS. Thus, the government's need for recourse to the responsible persons under 26 U.S.C. § 6672 remains important after confirmation of the reorganization plan.

### B. Designation of Payments

#### 1. Standard of Review

We review the decisions of the bankruptcy court and the bankruptcy appellate panel in the same manner: findings of fact for clear error, conclusions of law de novo. *United States v. Camino Real Landscape Maintenance Contractors, Inc. (In re Camino Real Landscape Maintenance Contractors, Inc.)*, 818 F.2d 1503, 1505 (9th Cir.1987).

#### 2. Decision of Bankruptcy Court

■ A taxpayer who makes voluntary payments to the IRS has the right to designate to which liability the payment will be applied. *In re Ribs–R–Us, Inc.*, 828 F.2d 199, 201 (3rd Cir.1987); *United States v. A & B Heating & Air Conditioning, Inc. (In re A & B Heating & Air Conditioning)*, 823 F.2d 462, 463 (11th Cir.1987); *Muntwyler*, 703 F.2d at 1032; *O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir. 1964); *Avildsen v. United States (In re Avildsen Tools & Machines, Inc.)*, 40 B.R. 253, 255 (N.D.Ill.1984), *aff'd on other grounds*, 794 F.2d 1248 (7th Cir.1986). When payments are involuntary, it is the policy of the IRS to apply the payments to whatever liability it chooses. *Slodov*, 436 U.S. at 252 n. 15, 98 S.Ct. at 1788 n. 15; *Ribs–R–Us*, 828 F.2d at 201; *A & B Heating*, 823 F.2d at 463; *Muntwyler*, 703 F.2d at 1032.

The issue here is whether payment of taxes after the debtor has filed a petition for reorganization under Chapter 11, but prior to confirmation of the reorganization plan, is voluntary.

TKO argues that its payments were voluntary because it was under no obligation to make any payments to any creditor prior to confirmation of its reorganization plan. TKO contends that therefore, its payments were not due to any enforced collection procedures or the participation of the government in the bankruptcy proceedings. TKO readily acknowledges that by designating application of the payments first to the trust fund portion of its liability, it is attempting to reduce the personal liability of its responsible persons under 26 U.S.C. Section 6672.

The government contends that the presence of judicial action renders payments by a taxpayer involuntary, and thus that TKO's payments were involuntary because they were made in the course of a bankruptcy proceeding. The government also argues that the bankruptcy court does not have equitable jurisdiction to allow TKO's responsible persons to extinguish their Section 6672 liability because this undermines the purpose of Section 6672.

■ Federal courts have struggled with the voluntary/involuntary distinction in the

bankruptcy context and have come to different conclusions.[1] We conclude that payments made by a debtor in possession after filing a petition for reorganization under Chapter 11, but prior to confirmation of a reorganization plan, are involuntary and the bankruptcy court does not have equitable jurisdiction to order otherwise.

In *Amos v. Commissioner of Internal Revenue*, 47 T.C. 65, 69 (1966), the tax court defined involuntary payment:

> An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.

The Seventh Circuit in *Muntwyler* observed that *Amos* and the cases decided after it "uniformly define an involuntary payment as one made pursuant to judicial action or some form of administrative seizure, like a levy." 703 F.2d at 1033. In *Muntwyler*, the court held that payments to the IRS made by the trustee of an assignment for the benefit of creditors were voluntary because the only IRS action was the filing of a claim with the trustee, and therefore payments could be directed by the debtor to its trust fund liabilities. The court distinguished the assignment for the benefit of creditors from payments made in bankruptcy, because "court action is involved" in the latter. *Id.* The court stated that "[t]he Government might have been correct in its claim if the corporation had been in bankruptcy, which it was not." *Id.* at 1034 n. 2.

The Third Circuit followed the reasoning of *Muntwyler* in *In re Ribs-R-Us*. There, the court held that "payments on prepetition federal tax liabilities by a debtor pursuant to a plan of reorganization under Chapter 11 are involuntary [and therefore] the debtor cannot direct the allocation of such payments between the trust fund and non-trust fund portions of the debtor's tax liabilities." 828 F.2d at 199. In so doing, the Third Circuit relied on the opinion of the dissenting judge of the bankruptcy appellate panel in this case, quoting:

> Debtors who file under *any* chapter of the bankruptcy code have few, if any, options. As a practical matter, they file bankruptcy because it is a last chance for a relatively ordered financial liquidation or rehabilitation rather than the out-of-control financial debacle facing them on the eve of bankruptcy.

*Id.* at 203 (quoting *In re Technical Knockout Graphics, Inc.*, 68 B.R. 463, 469 (Bankr. 9th Cir.1986) (Volinn, Bankr. J., dissenting)).

Other courts have held that payments to the IRS by a debtor during a Chapter 11 reorganization are involuntary, and therefore the debtor cannot designate to which liability its payments will be allocated. *See, e.g., In re Frost*, 47 B.R. 961, 964-65 (D.C.Kan.1985); *Avildsen*, 40 B.R. at 256.

TKO seeks to distinguish its case on grounds that its proposed payments were not made under a reorganization plan, and the involvement of the IRS and the bankruptcy court was slight. However, this argument glosses over the responsibilities and protections Congress created for debtors who enter into a judicially supervised bankruptcy proceeding.

Once a debtor files a bankruptcy petition, the property it then possesses, as well as funds acquired thereafter, become the property of the estate. 11 U.S.C. § 541(a). The debtor-in-possession is not free to deal with this property as it chooses, but rather holds it in trust for the benefit of creditors, just as would a trustee. 11 U.S.C. § 1107; S.Rep. No. 989, 95th Cong., 2d Sess. 116, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5902. The property is not held for the benefit of the responsible per-

---

**1.** Examples of cases holding that payments pursuant to a reorganization plan under Chapter 11 are voluntary include: *Ducharmes & Co., Inc. v. Michigan*, 75 B.R. 71 (E.D.Mich.1987); *Tom LeDuc Enterprises, Inc. v. United States (In re Tom LeDuc Enterprises, Inc.)*, 47 B.R. 900 (W.D.Mo. 1984); *In re Energy Resources Co., Inc.*, 59 B.R. 702 (Bankr.D.Mass.1986); *In re Lifescape, Inc.*, 54 B.R. 526 (Bankr.D.Colo.1985). Examples of cases holding that payments pursuant to a reorganization plan under Chapter 11 are involuntary include: *In re Frost*, 47 B.R. 961 (D.Kan. 1985); *In re Mister Marvins, Inc.*, 48 B.R. 279 (E.D.Mich.1984).

sons, who, in this action, are not even parties. By filing a bankruptcy petition, the debtor enjoys the protection of an injunction barring secured and unsecured creditors from pursuing the debtor without court intervention. A debtor-in-possession is required to obtain the court's permission to make payments other than in the ordinary course of business, and notice of this must be given to creditors. 11 U.S.C. 363(b), (c); *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1225–26 (5th Cir.1986). To approve a reorganization plan, the court must find that the proposed plan is "fair and equitable," meaning that the payment priorities of the Bankruptcy Code are met. *United States v. AWECO, Inc. (In re AWECO)*, 725 F.2d 293, 298 (5th Cir.), *cert. denied*, 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984). The debtor-in-possession is not free to pay whomever it chooses before the plan is confirmed, as this could defeat the priority scheme established by Congress.

Thus, by filing a bankruptcy petition under Chapter 11, TKO used the authority of the court to keep its creditors at bay while it reorganized and regained financial stability. TKO is not free to abuse this system by designating its payments in a way that benefits only its responsible persons, and possibly harms other creditors, including the IRS, without the scrutiny of the court or other creditors. The IRS is entitled to apply TKO's payments as the IRS sees fit, to preserve the right of the IRS to pursue the responsible persons under 26 U.S.C. § 6672.

### 3. *Decision of the Bankruptcy Appellate Panel*

The bankruptcy appellate panel held that the bankruptcy court had the authority to order the IRS to apply TKO's payments to its trust fund liability pursuant to 11 U.S.C. § 505 or under its equitable jurisdiction. There are several problems with the panel's decision.

First, it mischaracterizes the bankruptcy court's decision. The bankruptcy court did not order the IRS to apply TKO's payments to the trust fund liability, rather it ordered the IRS to apply the payments in whatever way TKO desired. Second, the bankruptcy court did not act under 11 U.S.C. § 505. Section 505 allows the bankruptcy court to determine the amount of a tax liability. However, the amount owed was not disputed here, and the court made no such determination. Thus, the record does not support the bankruptcy appellate panel's affirmance of the order based on the bankruptcy court's power under Section 505.

Third, to the extent the bankruptcy appellate panel's decision rested on the bankruptcy court's equitable jurisdiction, this, too, is misplaced. While a bankruptcy court is a court of equity, "its broad equitable powers may only be exercised in a manner which is consistent with the provisions of the Code." *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 273 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). As discussed earlier, to allow TKO, while in a bankruptcy proceeding, to designate how its payments are to be applied, without notice to creditors or court approval, would subvert the Bankruptcy Code. Such a decision is not within the bankruptcy court's equitable jurisdiction. The IRS is entitled to apply TKO's payments as it sees fit, to safeguard its own position as a creditor.

### III. CONCLUSION

The decision of the bankruptcy appellate panel is reversed.

**REVERSED.**