## In re SHREVE STEEL ERECTION, INC., Debtor.

### Bankruptcy No. SL 83–00091.

United States Bankruptcy Court, W.D. Michigan.

Oct. 11, 1988.

Roland F. Rhead, Glassen, Rhead, McLean & Campbell, P.C., Lansing, Mich., for debtor.

R. Todd Luoma, Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

## OPINION AND ORDER

DAVID E. NIMS, Jr., Bankruptcy Judge.

This case is before the court on the Debtor's objection to the Internal Revenue Service's proof of claim. The Chapter 7 Debtor objects because the Internal Revenue Service did not follow the Debtor's instructions that its prepetition tax overpayments be applied to its prepetition trust fund tax liability.

## FACTS

On January 12, 1983, Shreve Steel Erection, Inc. (the "Debtor") filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On September 28, 1983,

the Debtor filed with the Internal Revenue Service (the "IRS") amended federal corporate income tax returns for the years 1976, 1978, 1979, and 1980. The returns indicated $18,765 in overpayments from carry-backs for net operating losses. Accompanying each year's tax return was a letter written by the Debtor to the IRS office in Detroit, Michigan, directing the IRS to allocate these overpayments to its 1981 and 1982 trust fund taxes, but not to penalties and interest.

The Debtor is indebted to the IRS for two kinds of tax liability, trust fund liability and non-trust fund liability. Briefly, trust fund taxes are taxes due from the Debtor's employees which the Debtor withheld from their wages and was to hold in trust for the United States. To the extent that such withheld wages were not held in trust for the United States, the corporate employees responsible for insuring the enforcement of that trust (the "responsible persons") are personally liable for the amount of the deficiency under 26 U.S.C. § 6672. Non-trust fund taxes are taxes due from the Debtor itself, and are not considered held in trust. Therefore, the responsible persons are not personally liable for the non-trust fund taxes. *Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir.1983).

Just prior to filing the amended returns, Marvin Shreve and Lisa Bartlett, two of Debtor's officers, met with IRS representatives in Lansing, Michigan. At the meeting, an IRS agent told the Debtor's officers that any instructions on the allocation of the overpayments should be set forth in a letter attached to the amended returns. The IRS agent further stated that the IRS would honor such a letter of instruction.

In December of 1983, Bartlett contacted the IRS's Detroit office to confirm the status of its letters. She was informed that the IRS would apply the overpayments according to its own procedures and that taxpayer requests had no effect. Mr. Shreve's and Ms. Bartlett's concern about how the overpayment refund is allocated stems from the fact that they are "responsible persons" and could be held personally liable if the trust fund taxes are not paid.

The IRS filed its proof of claim for $68,-635.07 on April 21, 1983. On May 9, 1985, the IRS filed an amended proof of claim reducing the claim to $50,002.17. The Debtor objected to the amended claim on December 9, 1986, "for the reason that payments made by the Debtor had not been correctly applied to the tax obligations of the Debtor to the [IRS]." On November 20, 1987, the Debtor voluntarily converted to a Chapter 7 case. The Debtor's objection was originally scheduled for hearing on January 26, 1987. Due to numerous requests for adjournment by the parties, as they apparently attempted to resolve another controversy between themselves, the court did not hear the Debtor's objection until December 29, 1987.

At that hearing, the parties agreed that the $18,765 in overpayments from the amended federal corporate income tax returns were allocated as follows:

| Taxes to Which Overpayments Were Applied | Amount Applied to Tax | Interest | Penalty | Year of Overpayment |
|---|---|---|---|---|
| 940 1981 | $2,155.78 | $ 312.81 | –0– | 1976 |
| 940 1982 | 1,070.41 | –0– | –0– | 1976 |
| 940 1982 | 2,576.87 | –0– | –0– | 1978 |
| 941 2Q 1981 | 188.63 | 1,118.50 | –0– | 1978 |
| 941 2Q 1981 | 7,148.93 | –0– | –0– | 1979 |
| 941 3Q 1981 | –0– | –0– | $ 812.07 | 1979 |
| 941 2Q 1982 | 418.88 | 24.12 | –0– | 1980 |
| 941 4Q 1982 | 808.42 | –0– | –0– | 1980 |
| 941 3Q 1981 | –0– | –0– | 2,129.58 | 1980 |

However, the Debtor did not stipulate that this was the proper allocation. The Debtor admitted that the $50,002.17 amount stated

on the IRS's proof of claim is the same amount the Debtor would owe the IRS had the overpayments been applied as they requested. In other words, the Debtor does not dispute the total amount of taxes due, but only contests the type of taxes owed.

## DISCUSSION

This court is bound by the recent decision of the Sixth Circuit Court of Appeals, *DuCharmes & Company, Inc. v. State of Michigan (In re DuCharmes & Company)*, 852 F.2d 194 (6th Cir.1988) (per curiam). *DuCharmes* is identical to a recent decision in this court, *In re Shoup*, No. 86–03017, slip op. (Bankr.W.D.Mich. Sept 9, 1988). Unlike the case at bar, the issue in *DuCharmes* arose when the IRS objected to a chapter 11 plan of reorganization which provided that any tax payments made by the debtor were to be allocated first to "trust fund" taxes. The bankruptcy court sustained the objection of the IRS, but the district court reversed on appeal. Subsequently, the court of appeals agreed with the bankruptcy court and reversed the district court. The court of appeals held that the payment was "involuntary" and as a result, the IRS did not have to allocate the payment to the debtor's trust fund liabilities. In so holding, the court was following the decisions of the Third and Ninth Circuits in the cases of *In re Ribs–R–Us, Inc.*, 828 F.2d 199 (3rd Cir.1987), and *In re Technical Knockout Graphics, Inc.*, 833 F.2d 797 (9th Cir.1987), respectively.

The case of *Technical Knockout Graphics* is very similar to the present case. There, the payments were made by a debtor-in-possession after filing the chapter 11 petition but prior to confirmation of the plan. The debtor filed a motion asking that it be allowed to make payments to the IRS to reduce the trust fund portion of its pre-petition tax liability. The IRS opposed the motion. The bankruptcy court granted the motion and this was affirmed by the bankruptcy appellate panel. *In re Technical Knockout Graphics, Inc.*, 68 B.R. 463 (Bankr. 9th Cir.1986). The court of appeals reversed the bankruptcy appellate panel, stating: "We conclude that payments made by a debtor-in-possession after filing a peti-

tion for reorganization under Chapter 11, but prior to confirmation of a reorganization plan, are involuntary and the bankruptcy court does not have equitable jurisdiction to order otherwise." *Technical Knockout Graphics*, 833 F.2d at 802.

The court went on to hold:

Thus, by filing a bankruptcy petition under Chapter 11, TKO used the authority of the court to keep its creditors at bay while it reorganized and regained financial stability. TKO is not free to abuse this system by designating its payments in a way that benefits only its responsible persons, and possibly harms other creditors, including the IRS, without the scrutiny of the court or other creditors. The IRS is entitled to apply TKO's payments as the IRS sees fit, to preserve the right of the IRS to pursue the responsible persons under 26 U.S.C. § 6672.

*Technical Knockout Graphics*, 833 F.2d at 803.

The bankruptcy appellate panel in *Technical Knockout Graphics* held that the bankruptcy court had jurisdiction to designate how payments to the IRS were to be allocated under 11 U.S.C. § 505 or under its equitable jurisdiction. In answering this proposition, the Ninth Circuit Court of Appeals said:

First, it mischaracterizes the bankruptcy court's decision. The bankruptcy court did not order the IRS to apply TKO's payments to the trust fund liability, rather it ordered the IRS to apply the payments in whatever way TKO desired. Second, the bankruptcy court did not act under 11 U.S.C. § 505. Section 505 allows the bankruptcy court to determine the amount of a tax liability. However, the amount owed was not disputed here, and the court made no such determination. Thus, the record does not support the bankruptcy appellate panel's affirmance of the order based on the bankruptcy court's power under Section 505.

Third, to the extent the bankruptcy appellate panel's decision rested on the bankruptcy court's equitable jurisdiction, this, too, is misplaced. While a bank-

ruptcy court is a court of equity, "its broad equitable powers may only be exercised in a manner which is consistent with the provisions of the Code." *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 273 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). As discussed earlier, to allow TKO, while in a bankruptcy proceeding, to designate how its payments are to be applied, without notice to creditors or court approval, would subvert the Bankruptcy Code. Such a decision is not within the bankruptcy court's equitable jurisdiction. The IRS is entitled to apply TKO's payments as it sees fit, to safeguard its own position as a creditor. *Technical Knockout Graphics*, 833 F.2d at 803.

It is the responsibility of this court to allow or disallow claims, as well as to determine the amount of such claims. 11 U.S.C. § 502(b). The allowance or disallowance of claims against an estate is a core proceeding and bankruptcy courts have jurisdiction to hear and determine these matters. 28 U.S.C. § 157(b)(2)(B).

Following *Technical Knockout Graphics*, and *DuCharmes*, 852 F.2d 194 (6th Cir.1988), this court finds the Debtor's payment to be involuntary, and as a result, the Debtor may not designate how the payments are to be allocated. Thus, the IRS may apply the payment however it wants.

This motion raises serious questions as to the jurisdiction of the court, the standing of the parties, and mootness.

The bankruptcy court has jurisdiction to determine the amount of a debtor's liability. 11 U.S.C. § 505. However, in the present case no dispute exists as to the amount of tax liability. The only dispute concerns how the payments will be allocated to the Debtor's tax liability. Since a change in allocation will not benefit the Debtor at all, but instead can only benefit the non-debtor responsible persons, this court may lack the jurisdiction under § 505 to alter this allocation. See, *M.D.F.C. Equipment Leasing Corp. v. Robbins (In re Interstate Motor Freight System)*, 62 B.R. 805 (Bankr.W.D.Mich.1986).

The motion also raises a question of standing. The moving party is the Debtor, but the real parties in interest are the non-debtor officers. The Debtor has not shown what harm the present allocation presents to it particularly, nor what benefit a change could confer upon it. If the IRS is required to allocate the payments as the Debtor requests, the benefits would accrue solely to the Debtor's officers, Marvin Shreve and Lisa Bartlett. Conversely, denial of the Debtor's requested relief would not impact the Debtor at all. Therefore, the Debtor may be without standing to litigate what is essentially the tax liability of another. See, *M.D.F.C. v. Robbins*, 62 B.R. 805.

Finally, it can be claimed that the proceeding is moot. Since the Debtor does not dispute the amount or validity of the claim, and since a determination of the proper allocation of overpayments would serve no purpose to the estate, it appears the proceeding may be moot.

All of these objections could have been relied on in *Technical Knockout Graphics*, 833 F.2d 797. Instead, the Ninth Circuit Court of Appeals preferred to attack the problem directly and not rely on lack of jurisdiction. Rather than dismiss this proceeding on jurisdictional grounds alone, and perhaps force the parties to undergo further litigation, delays, and expense, I will follow the lead of *Technical Knockout Graphics* and deny the objection on its merits.

Debtor's objection to the IRS' proof of claim is denied with prejudice.