In the Matter of GILLEY CONSULTING ENGINEERS, INC., Debtor.

**Bankruptcy No. A86–05046–WHD.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Sept. 19, 1989.

Herbert C. Heitman, Atlanta, Ga., for debtor.

Curtis L. Bowman, Trial Atty., Tax Div., U.S. Department of Justice, Washington, D.C., for I.R.S.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter is before the Court on remand from the United States District Court for the Northern District of Georgia. It began with Gilley Consulting Engineers, Inc. (hereinafter "Debtor") filing a Chapter 11 petition in bankruptcy on July 11, 1986. At Debtor's confirmation hearing on April 15, 1987, the Internal Revenue Service ("IRS") objected to a provision in Debtor's reorganization plan that all payments to the IRS would be applied first to the "trust fund" portion of Debtor's tax debt. This Court entered an order on June 9, 1987, 74 B.R. 568, overruling the IRS's objection, finding the payments under the plan to be voluntary and therefore allocable by Debtor, and relying on *In re A & B Heating & Air Conditioning, Inc.*, 53 B.R. 54 (Bankr. M.D.Fla.1985), *aff'd* CCH Bankr.Law Rep. ¶ 71,220 (M.D.Fla.1986). The plan was confirmed.

The IRS filed an appeal to the District Court, claiming that the June 9 order had no basis in law because *A & B Heating* was later found to be moot. The District Court in turn reopened the case and remanded it back to this Court for further consideration of the issue, in light of the subsequent history of *A & B Heating*. On June 29, 1989, this Court asked for briefs on the matter within 20 days. Having received briefs only from IRS's counsel during that time, this Court nonetheless is ready to reconsider its earlier decision.

## I.

The preliminary issue to be decided is the impact of *A & B Heating*'s subsequent history on this Court's order of June 9, 1987. The District Court opinion in that case was reversed and remanded by the 11th Circuit; the Circuit Court held that the issue of whether a tax payment was considered voluntary or involuntary depended on the circumstances of each case, 823 F.2d 462 (11th Cir.1987). After the 11th Circuit reached that decision, the debtor in the case paid its tax debts in full, and the United States Supreme Court vacated and remanded the decision for consideration of the issue of mootness, *U.S. v. A & B Heating & Air Conditioning, Inc.,* —— U.S. ——, 108 S.Ct. 1724, 100 L.Ed.2d 189 (1988).

The 11th Circuit initially refused to find the case to be moot, 861 F.2d 1538 (11th Cir.1988), but later remanded the case for dismissal when the debtor deleted the designation of tax payments provision from its Chapter 11 plan, finally making the case moot, 878 F.2d 1311 (11th Cir.1989). This invalidated the precedential impact of the case, *U.S. v. Munsingwear, Inc.*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950); *Delta Airlines, Inc. v. McCoy Restaurants, Inc.*, 708 F.2d 582 (11th Cir.1983). Because this Court relied primarily on the Bankruptcy Court's decision (affirmed by the District Court) in *A & B Heating*, and because the central issue has been discussed extensively in several later Circuit Court decisions, this Court shall reconsider its June 9, 1987 order, taking into consideration the pertinent new legal developments.

## II.

The relevant tax provisions have not changed. Trust fund taxes are those income and social security taxes deducted and withheld by employers from their employees' wages, 26 U.S.C. §§ 3102, 3402, and are deemed to be held in trust for the United States, 26 U.S.C. § 7501(a). Officials who are responsible for collecting these trust fund taxes and who fail to remit them to the IRS are personally liable

for the full amount of the unpaid taxes, 26 U.S.C. § 6672. Corporate income taxes and social security taxes owed by employers themselves are considered non-trust fund taxes, and responsible officials are not held personally liable for their nonpayment.

A taxpayer making a voluntary payment to the IRS may allocate it toward either trust fund or non-trust fund tax debts, *Muntwyler v. U.S.*, 703 F.2d 1030 (7th Cir. 1983). Conversely, when a taxpayer makes an involuntary payment, the taxpayer may not make such an allocation, and the IRS may designate the payment as it sees fit pursuant to its statutory duty to maximize collection of taxes owed to the government, *U.S. v. DeBeradinis*, 395 F.Supp. 944 (D.Conn.1975), *aff'd* 538 F.2d 315 (2d Cir. 1976). The Tax Court provided a widely used definition of "involuntary payment":

> An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.

*Amos v. Commissioner*, 47 T.C. 65, 69 (1966).

■ The controversial question is whether payment under a Chapter 11 reorganization plan is considered to be voluntary or involuntary. To a certain extent, payment under any bankruptcy proceeding is judicially compelled; yet Chapter 11 does not involve the seizure of property or levy that the *Amos* definition seems to envision. Thus, the apparent answer is that both qualities can be found in Chapter 11 payments. Involuntary elements of Chapter 11 proceedings include the following: (1) All assets vest in the bankruptcy estate upon filing, 11 U.S.C. § 541 (1989); (2) The debtor-in-possession must act as a "fiduciary" for the benefit of creditors, 11 U.S.C. § 1107 (1989); (3) The debtor-in-possession must act in accordance with any orders issued by the court, 11 U.S.C. §§ 105(a),

1141(a), 1142(b) (1989); (4) The court will determine the extent of debtor's tax liability, 11 U.S.C. § 505 (1989); (5) The debtor's plan must pay tax claims in full within six years of their assessment, 11 U.S.C. § 1129(a)(9)(C) (1989); (6) The debtor must carry out its plan upon the court's confirmation, 11 U.S.C. § 1142 (1989); (7) The court may convert the case to a Chapter 7 if the debtor fails to comply with the plan, 11 U.S.C. § 1112(b) (1989). *In re Energy Resources Co., Inc.*, 871 F.2d 223, 229 (1st Cir.1989); *In re Ribs–R–Us*, 828 F.2d 199 (3d Cir.1987).

On the other hand, payments under a Chapter 11 plan have these voluntary characteristics: (1) The debtor chooses to enter a Chapter 11 proceeding voluntarily; (2) Chapter 11 offers protection from creditors through the automatic stay, 11 U.S.C. § 342 (1989); (3) The debtor need not pay his tax debts before the expiration of six years, 11 U.S.C. § 1129(a)(9)(C) (1989); (4) The debtor has much latitude in how and when the IRS is to be paid under the plan; (5) Third parties can voluntarily provide money used to pay back the IRS; (6) If the debtor fails to provide an acceptable plan, the court may decide to dismiss the Chapter 11 proceeding rather than compel a conversion to Chapter 7, 11 U.S.C. § 1112(c) (1989). *In re Energy Resources*, 871 F.2d at 229.

The First Circuit Court of Appeals recognized the important considerations on both sides of the argument, and decided to give the benefit of the doubt to the IRS in interpreting its own rules. Thus it decided to accept the conclusion that payments under Chapter 11 reorganization plans were involuntary in nature, *Id.* at 229–30. Using a more one-sided rationale, the other Circuit Courts that have decided the issue have come to the same result, *In re Ribs–R–Us*, 828 F.2d at 199; *In re DuCharmes & Co.*, 852 F.2d 194 (6th Cir.1988); *In re Technical Knockout Graphics*, 833 F.2d 797 (9th Cir.1987). In fact, the only Circuit Court to disagree was the 11th Circuit in *A & B Heating*, 823 F.2d at 462,[1] and that

---

**1.** The 11th Circuit actually ruled that the determination of voluntariness of tax payments under Chapter 11 plans must be done on a case-by-case basis, not that all such payments were

decision was rendered moot. Given the overwhelming weight of authority at the Circuit Court level, this Court has no choice but to follow these decisions and rule that the tax payments in this case shall be considered involuntary.

### III.

The conclusion that tax payments under the Chapter 11 plan are considered involuntary does not end the inquiry. Though the IRS does not allow taxpayers to allocate involuntary payments to trust fund or non-trust fund tax debts, the Bankruptcy Court may have the authority to allocate these payments. Section 505 of the Bankruptcy Code gives the Court the power to determine the amount or legality of any tax, 11 U.S.C. § 505(a)(1) (1989); the Court can also restructure tax debts, and tell creditors against which of the debtor's debts they are to apply payments, *Energy Resources*, 871 F.2d at 231. Moreover, § 105 provides the Court with broad equitable powers to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code, 11 U.S.C. § 105(a) (1989); *Energy Resources*, 871 F.2d at 230.

As a result, the First Circuit Court of Appeals has ruled that the Bankruptcy Court may allocate payments in whatever manner regardless of IRS policies regarding voluntary and involuntary payments, *Id.* at 233-4. However, the Bankruptcy Court's power in this area should not be unlimited. First, the Court's actions pursuant to § 105 must be in furtherance of the policies of the Code, *Technical Knockout Graphics*, 833 F.2d at 803. Second, the 11th Circuit Court of Appeals has shown deference to the policy concerns of § 6672 of the Internal Revenue Code (which holds responsible officials liable for unpaid trust fund taxes), and has found the operation of the statute to be undisturbed by the effects

of Bankruptcy Court decisions in other cases, *U.S. v. Huckabee Auto Co.*, 783 F.2d 1546 (11th Cir.1986); *Monday v. U.S.*, 421 F.2d 1210 (11th Cir.1970), *cert. denied* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970).

 This Court must therefore decide if an allocation of Debtor's payments to trust fund tax debts would intrude upon the goals of the Bankruptcy and Internal Revenue Codes. The policy behind § 6672 is to prevent employers from misappropriating employee tax funds by holding individuals responsible for these funds, *Ribs–R–Us*, 828 F.2d at 200. Underlying this interest is the goal that pervades every IRS provision: to "maximize the public fisc," *A & B Heating*, 823 F.2d at 465; *see also Ribs–R–Us*, 828 F.2d at 204. The IRS argues that by allowing Debtor to allocate payments first to trust fund debts, responsible individuals may avoid liability for later tax payments that they are unable to make, which would defeat the purpose of the provision.

The First Circuit puts a spin on this argument, concluding that if the purpose of § 6672 is to ensure that trust fund debts are addressed, that purpose is more likely to be achieved if Debtor allocates its initial tax payments to those debts, *Energy Resources*, 871 F.2d at 232-33. This conclusion oversimplifies the situation. By allocating payments first to trust fund liabilities, "responsible" officials of a corporate debtor without enough money to pay all of its tax debts can still get away with misappropriation of funds simply by shifting the deficiency to later-paid non-trust fund tax debts. The conclusion also overlooks the underlying IRS policy of maximizing tax revenues, which is compromised if the IRS cannot turn to "responsible" individuals when the corporation runs out of money.

Similarly, allocating funds to trust fund debts first will not serve the policy concerns underlying the Bankruptcy Code.

---

voluntary, 823 F.2d at 465. *Ribs–R–Us* expressly disagreed:

> It appears to us that whether a payment of taxes made by a debtor in a Chapter 11 reorganization is to be construed as voluntary for purposes of the debtor's ability to designate to which taxes the payment is to be applied is a question of law rather than an issue for the

exercise of discretion. A uniform federal rule is preferable so that debtors, creditors, and the Internal Revenue Service will be able to know in advance whether the debtor can make such a designation and guide their decisions accordingly.

828 F.2d at 202.

Those concerns include protecting debtors from an onslaught of creditors, and encouraging debtors to reorganize so that they can pay back their debts. The First Circuit asserts that reorganization will be less likely if corporate debtors are not allowed to allocate their tax payments because "responsible" officials who face liability for delinquent trust fund taxes will not contribute money to the reorganization; they would avoid liability if the corporation chose straight liquidation, in which all of the taxes are paid immediately, *Energy Resources*, 871 F.2d at 230.

This is a legitimate concern. However, this Court is more concerned about debtors who may manipulate the Bankruptcy Code to misappropriate funds and to deprive their creditors of payments. Allocation of payments to trust fund tax debts has no value to the taxpayer who intends to pay all of its taxes, because such a taxpayer would not be concerned about the personal liability of "responsible" individuals. On the other hand, taxpayers who have less honorable intentions have an easy avenue through such an allocation to hold the IRS at bay and deprive it of payments. While depriving this creditor, the allocation protects not the corporate debtor but the "responsible" individuals; thus it does not serve the purposes of the Bankruptcy Code. *See Technical Knockout Graphics*, 833 F.2d at 803.

If the tax payments were voluntary, the taxpayer would have the right to minimize the exposure to "responsible" persons. However, in this situation the payments must be deemed involuntary, and the IRS has determined that allocation of tax payments is not allowed. This Court does not seek to attribute improper motives to Debtor in the present case, but it will not exercise its extraordinary equitable powers as a matter of course to controvert the authority of the IRS and to provide this potential shelter to taxpayers who seek to escape their debts.

Accordingly, it is ORDERED that this Court's order of June 9, 1987 is VACATED; and it is

FURTHER ORDERED that Debtor's plan is MODIFIED to reflect that the IRS may allocate payments under the plan as it wishes, notwithstanding any language in the plan to the contrary, and the plan as modified is CONFIRMED.

IT IS SO ORDERED.