**In re The LOOKING GLASS, LTD., Debtor.**

**Bankruptcy No. 86 B 16863.**

United States Bankruptcy Court, N.D. Illinois, E.D.

April 18, 1990.

Andy Norman, Hyatt Legal Services, Norridge, Ill., for the Looking Glass, Ltd.

Steven E. Cole, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Cathleen M. Novak, Sp. Asst. U.S. Atty., Chicago, Ill., for the I.R.S.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes to be heard on the motion[1] of the Debtor and Thomas Moseley ("Moseley"), a corporate officer of the Debtor, for an order directing the United States of America by and through its Internal Revenue Service (the "IRS") to apply payments made to it through the bankruptcy case to certain of the Debtor's tax obligations. For the reasons set forth herein, the Court, having considered all of the evidence adduced at trial, does hereby deny the motion.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334 and General Rule 2.33(a) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under · 28 U.S.C. § 157(b)(2)(A), and (0).

## II. FACTS AND BACKGROUND

Many of the relevant facts have been stipulated to by the parties. The Debtor filed a Chapter 11 petition on October 28, 1986. The Debtor operated as a beauty salon with a wide variety of services, including the sale of women's apparel. Subsequently, on September 23, 1987, the case was converted to Chapter 7, effective September 30, 1987. Thereafter, Joel Schechter (the "Trustee") was appointed trustee of the estate. He proceeded to liquidate the assets of the estate. At the time the Trustee filed his final report and account, $20,430.93 was available for distribution. On June 1, 1989, the Court ordered disbursement of the proceeds upon approval of the Trustee's report.

On November 9, 1989, the Debtor and Moseley filed the instant motion seeking an order directing the IRS to apply payments made through the case to the Debtor's unpaid "trust fund" tax obligations. The Debtor and Moseley assert that the payments are voluntary and thus can be properly allocated to the unpaid trust fund taxes pursuant to their direction. Moreover, they contend that the Court has the authority to order the IRS to apply the payments to the trust fund taxes.

The IRS filed an objection on November 30, 1989. The IRS claims that the tax payments made in the course of this bankruptcy case are involuntary. Hence, the IRS asserts that it can apply the involuntary payments to the Debtor's tax liabilities as it deems appropriate. Additionally, the IRS alleges that the Court lacks jurisdiction to direct allocation of the payments. The IRS further contends that if the Court has jurisdiction, the Debtor is not entitled to such an order under the facts of the case or pursuant to the applicable law.

The parties have stipulated that the sum of $37,620.31 is the amount due and owing the IRS for the pre-petition trust fund portion of the taxes. In addition, the parties have stipulated that $15,270.18 is the sum due for the pre-petition non-trust fund portion of the taxes. On January 10, 1990, the Trustee tendered two checks to the IRS totalling $16,208.82. The first check paid

---

**1.** The matter was improperly styled an application. Fed.R.Bankr.P. 9013. There are approximately eight requests for relief by application. The relief sought in this matter is not one of them. *See* Fed.R.Bankr.P. 1006(b)(1); 2007(a); 2014(a); 2015(a)(6); 2016(a); 9006(d); and 9027(a).

the IRS in full for its post-petition administrative tax claim in the amount of $2,283.00. The second check paid the IRS $13,924.83 on its claim for pre-petition taxes. The Debtor and Moseley seek to have both checks applied against the $37,620.31 trust fund taxes. An evidentiary hearing was held on March 15, 1990. The parties were given leave to submit closing arguments and the matter was then taken under advisement.

### III. DISCUSSION

#### A. *Trust Fund Taxes*

The Internal Revenue Code requires employers to withhold monies from an employee's wages for personal income tax, unemployment insurance and social security taxes owed or that will be owed by their employees. *See* 26 U.S.C. §§ 3102(a), 3402(a) and 3403 (1986). Because the law requires employers to hold these funds "in trust for the United States", these taxes are commonly referred to as "trust fund" taxes.[2] *See Slodov v. United States*, 436 U.S. 238, 242–43, 98 S.Ct. 1778, 1782–83, 56 L.Ed.2d 251 (1978). If employers fail to pay trust fund taxes, the IRS can collect the sum directly from the officers or employees of the employer who are responsible for their collection and payment. *See* 26 U.S.C. § 6672 (1986). Accordingly, the IRS seeks to pursue Moseley for the full amount of the unpaid trust fund taxes, namely $37,620.31. Only the Debtor, or in this case, its estate is liable to pay the non-trust fund portion of the unpaid pre-petition taxes. *See Monday v. United States*, 421 F.2d 1210, 1218 (7th Cir.1970), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). The IRS cannot pursue Moseley personally for the non-trust fund taxes owed by the Debtor.

The IRS has proceeded with some collection efforts against Moseley because the total pre-petition tax claims aggregate $52,-890.49, but the dividend check from the Trustee for pre-petition taxes is only $13,-924.83. If the objection by the IRS is sustained, it will apply that dividend to pay most of the non-trust fund taxes. If the motion is allowed, the IRS would have to credit all of the payments from the Trustee against the trust fund tax claim and would be able to pursue Moseley for the difference, namely $11,411.49. ($37,620.31 minus $16,208.82). Obviously, Moseley would prefer personal exposure and liability limited to the lesser amount, therefore providing the impetus for the motion.

#### B. *Voluntariness of the Payments*

The first issue raised by the parties is whether the payment made to the IRS by the Trustee in this Chapter 7 case should be characterized as voluntary or involuntary. As a general rule, a taxpayer may direct the application of payments to whatever tax liability he chooses. *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir.1983), *citing O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir. 1964). However, this rule applies only when a taxpayer makes voluntary payments to the IRS. Conversely, when a payment is involuntary, or a voluntary payment is made without direction by the taxpayer, the IRS may designate the payment as it sees fit pursuant to its statutory duty to maximize collection of taxes owed to the government. *U.S. v. De Beradinis*, 395 F.Supp. 944 (D.Conn.1975), *aff'd*, 538 F.2d 315 (2d Cir.1976).

In *Muntwyler*, the Seventh Circuit adopted the definition of an involuntary payment contained in *Amos v. Commissioner*, 47 T.C. 65, 69 (1966) which states that "[a]n involuntary payment of Federal taxes means any payment received by agents of the United States as a result of

---

**2.** 26 U.S.C. § 7501(a) (1986). This statute provides:

whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a *special fund* in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as are applicable with respect to the taxes from which such fund arose. (emphasis added).

distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file claim therefor." *Muntwyler,* 703 F.2d at 1032. The distinction made between a voluntary and an involuntary payment lies in "the presence of court action or administrative action resulting in an actual seizure of property or money as in a levy." *Muntwyler,* 703 F.2d at 1033. When the payment is involuntary, the IRS's policy is to apply the payment to the non-trust fund taxes due the government. *Muntwyler,* 703 F.2d at 1033, *citing* IRS Policy Statement P–5–60, *reprinted in* 1 *Internal Revenue Manual, Administration* (CCH) 1305–15.

*Muntwyler* held that the mere filing of a claim by the IRS with an assignee for the benefit of creditors was not pursuant to a levy, judicial order or execution by judicial sale. Thus, the payment made was voluntary and could be directed by the taxpayer. The *Muntwyler* court noted that the government's position may have been correct had the corporation been in bankruptcy. *Muntwyler,* 703 F.2d at 1034 n. 2. The court further noted that it did not equate an assignment for the benefit of creditors with a formal bankruptcy proceeding. In the case at bar, the payments were made by bankruptcy trustee as distinguished from the assignee in *Muntwyler.*

Subsequent to the *Muntwyler* decision was *In re Avildsen Tools & Machines, Inc.,* 40 B.R. 253 (N.D.Ill.1984), *aff'd,* 794 F.2d 1248 (7th Cir.1986). In *Avildsen,* the court held that payments made in a Chapter 11 case by the debtor to the IRS, after a sale of the assets was confirmed by the bankruptcy court, were involuntary and not subject to allocation by the debtor.

In *In re Mold Makers, Inc.,* 109 B.R. 845 (Bankr.N.D.Ill.1989), Judge DeGunther recently dealt with the issue of a disputed allocation of trust fund obligations in the context of a Chapter 11 reorganization plan. In *Mold Makers,* the IRS objected to the confirmation of the proposed plan of reorganization based on the debtor's allocation of payments made under the plan to the IRS to reduce its trust fund obligation. Judge DeGunther found that the payments

made to the IRS pursuant to the plan of reorganization were involuntary. He further stated:

> In short, nothing in the Bankruptcy Code or its underlying policy requires or even addresses the relief requested by the debtor. The Court will not grant such relief merely on broad speculation that reorganization would be enhanced because of a benefit to a third party, unrelated to the bankruptcy case.

*Id.* at 849.

Judge DeGunther concluded that allowing a debtor to direct the allocation of tax payments would prove an incentive to file Chapter 11 for the sole purpose of avoiding the allocation made by the IRS. Hence, he found that a debtor may not direct allocation of payments under a Chapter 11 reorganization plan for trust fund taxes.

In the context of a Chapter 7 case, several other courts have found that payments made to the IRS by the trustee were involuntary. *See e.g., In re 26 Trumbull Street, Inc.,* 96 B.R. 419 (Bankr.D.Conn. 1989); *In re Vermont Fiberglass, Inc.,* 88 B.R. 41 (D.Vt.1988); *In re Shreve Steel Erection, Inc.,* 92 B.R. 214 (Bankr.W.D. Mich.1988); *In re Clements Electric, Inc.,* 102 B.R. 101 (Bankr.S.D.Tex.1988); *In re Office Dynamics, Inc.,* 39 B.R. 760 (Bankr. N.D.Ga.1984); *In re Obie Elie Wrecking Co.,* 35 B.R. 114 (Bankr.N.D.Ohio 1983); *In re York Aviation, Inc.,* 115 B.R. 8, 10 (Bankr.D.Maine 1989); *In re Arlington Paper Co.,* No. 83 B. 12192, slip op. at 4 (Bankr.N.D.Ill. July 7, 1986).

■ Moseley testified that he made certain voluntary payments to the Debtor to keep the business afloat and that the IRS failed to take any action pre-petition to collect the unpaid tax liability. Regardless of such facts, the Trustee's dividend checks to the IRS do not constitute a voluntary payment from the Debtor. On the contrary, the dividends paid in this case are a result of court action based upon the report of the Trustee with respect to the IRS's claim. Here, the IRS seeks to collect its delinquent taxes through this court proceeding. The Trustee, not the Debtor, was

in control of the funds from which the dividend payments were made. Thus, no truly voluntary payment has been made by the Debtor. Hence, under *Muntwyler, Avildsen, Mold Makers* and the other cited cases, the payments to the IRS are involuntary. The Court will follow those decisions and finds that payments made by the Trustee to the IRS in this Chapter 7 case are involuntary. Consequently, the IRS has the authority to apply the payments in regard to the pre-petition tax claims as it deems appropriate.

### C. *The Court's Equity Power Pursuant to 11 U.S.C. § 105*

The second issue is whether the Court has the authority to order allocation as requested, and if so, whether it should be so exercised. *Mold Makers* also held that the bankruptcy court could exercise its authority under 11 U.S.C. § 105 to order allocation of the tax payment in a manner consistent with the language and the spirit of the Bankruptcy Code, notwithstanding the objections of the IRS. There is a line of authority that allows the Court to require certain allocation of payments if consistent with the policy of the Bankruptcy Code. The First Circuit in *In re Energy Resources Co.*, 871 F.2d 223 (1st Cir.1989), *cert. granted,* — U.S. —, 110 S.Ct. 402, 107 L.Ed.2d 369 (1989), held that the voluntary/involuntary distinction in a Chapter 11 case was irrelevant because the bankruptcy court has the power to adjust and allocate the debts pursuant to its broad equitable powers under the Bankruptcy Code. Other courts have followed the *Energy Resources* approach but have reached different results. *See In re Greenberg*, 105 B.R. 691 (Bankr.M.D.Fla.1989); *In re Gilley Consulting Engineers, Inc.*, 105 B.R. 734 (Bankr.N.D.Ga.1989).

The *Energy Resources* case held that although payments made during a Chapter 11 case were properly characterized as involuntary, the bankruptcy court had jurisdiction to direct the IRS to first apply the payments to the trust fund portion of the tax liability. *Energy Resources* 871 F.2d at 230. The First Circuit recognized a twofold purpose of the Bankruptcy Code; namely, ensuring fair treatment of creditors and providing the bankrupt with an opportunity for a fresh start. *Id., citing Burlingham v. Crouse*, 228 U.S. 459, 33 S.Ct. 564, 57 L.Ed. 920 (1913). The court concluded that a bankruptcy court could properly exercise its equitable jurisdiction in a situation where, for example, potentially responsible persons were willing to fund a reorganization only if tax payments made during the reorganization were applied first to the trust fund liabilities.

The Court agrees with the jurisdictional principle stated in both *Mold Makers* and *Energy Resources* and concludes that it has the equitable authority under section 105 to order payment of allowed claims in a manner consistent with the language and spirit of the Bankruptcy Code, notwithstanding a contrary administrative policy of the IRS concerning allocation of tax payments. Exercise of the Court's broad equitable discretion, however, is confined within the parameters of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (1988). Therefore, the Court rejects the IRS's argument that it lacks jurisdiction to so rule. However, the Court declines to exercise its authority to grant the relief requested by the Debtor and Moseley.

In the case at bar, an order directing payment of the trust fund obligations would confer no benefit on the Debtor. The Debtor has been liquidated and because it is a corporation does not receive a discharge under 11 U.S.C. § 727(a)(1). Accordingly, the fresh start policy is inapplicable and not served by the relief sought. Moreover, in a Chapter 7 case there are no reorganization goals to promote. Payments made here are not the result of a bargained for or negotiated plan of reorganization. In addition, the other creditors of the estate are unaffected by the application of the funds to the various tax obligations. The IRS, however, whose tax claims are not being fully paid would be severely impacted by the relief sought. It would collect nothing on its pre-petition non-trust

fund tax claim or its post-petition tax claim. Furthermore, the IRS could only pursue Moseley to collect $11,411.49, not the full $37,620.31 of unpaid pre-petition trust fund taxes. The person principally benefitted by the application of the dividends to the trust fund obligation is Moseley. Yet, he is the person responsible for payment of those taxes and the person who created the claim by failing to pay the IRS those taxes the Debtor withheld or should have withheld from its employees' wages and salaries. Despite Moseley's testimony that he created a fund for the IRS, he undisputedly helped to create the unpaid tax liabilities as well.

Moseley's testimony about his current personal financial problems resulting in his Chapter 13 petition recently filed in Indiana, as well as the evidence regarding his activities post-petition to sell assets to provide money for the estate to pay claims, is unavailing and does not change the result which equity dictates. At this stage of the case, the Court is concerned principally with maximizing payment of dividends to the creditors of this Chapter 7 estate and not Moseley's financial problems or his other personal creditors in his Chapter 13 case in another jurisdiction. Moseley's unrepaid loans or other contributions to the Debtor pre-petition and post-petition do not offset his legal liability for the trust fund taxes which accrued pre-petition. Although Moseley, the real party in interest in this matter, assisted the Trustee in the liquidation of the estate, his efforts in substantial part were admittedly taken to reduce his personal liability for the trust fund taxes. Allowance of the motion would preclude any recovery or payment on the non-trust fund tax claim.

To allow Moseley to direct the allocation of the tax payments from the Trustee would provide an incentive for responsible persons to file a Chapter 7 case for their controlled employer entities for the principal purpose of avoiding the allocation made by the taxing authorities and the resultant non-payment or reduced payment of non-trust fund taxes. Such a outcome would likely promote abuse and manipulation of a debtor's estate for the benefit of such responsible persons rather than to maximize dividends and other sources of recovery to taxing authorities as creditors of Chapter 7 estates. This result is as unacceptable to the Court as was the similar scenario presented to Judge DeGunther in *Mold Makers*. *See also In re Gilley Consulting Engineers, Inc.*, 105 B.R. 734, 738 (Bankr. N.D.Ga.1989); *In re York Aviation, Inc.*, 115 B.R. 8 (Bankr.D.Maine 1989).

Because the IRS has at least two sources of funds against which to proceed to collect the total of the unpaid trust fund and non-trust fund taxes, namely the Debtor's estate and the responsible persons under section 6672, it should be allowed to proceed against both sources. Consequently, the maximum of the properly assessed tax obligations can be collected and paid. This result comports with both the policy of the Internal Revenue Code for the IRS to maximize collection of taxes as part of the public revenue, and the policy of the Bankruptcy Code for creditors to receive maximum dividends on their unpaid allowed claims.

Accordingly, the Court hereby denies the motion for an order directing the IRS to apply the dividend payments to the trust fund tax liability. The post-petition administrative tax claims are entitled to priority under 11 U.S.C. §§ 507(a)(1) and 503(b)(1)(B)(i) and should be paid in full first as a matter of law. The balance of the dividend payment may be allocated to the unpaid pre-petition non-trust fund tax claim filed by the IRS.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby denies the motion for an order directing the IRS to allocate payments it received from the Debtor to the trust fund tax claim.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.