**In re F.A. DELLASTATIOUS, INC. t/a Springfield Plumbing & Heating, Debtor.**

**Bankruptcy No. 83–01240–A.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Nov. 14, 1990.

John A. Mell, Alexandria, Va., for debtor.

Robert K. Coulter, Tax Div., U.S. Department of Justice, Washington, D.C., and Henry Hudson, U.S. Atty., Alexandria, Va., for I.R.S.

Richard J. Stahl, Annandale, Va., Trustee.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

This matter is before the Court upon the motion of a Chapter 7 corporate debtor,

F.A. Dellastatious, Inc. (the "Debtor"), seeking an order directing that all amounts distributed out of its estate to the Internal Revenue Service (the "IRS") be allocated first to the Debtor's trust fund tax liability. The issues raised here are (1) whether a Chapter 7 corporate debtor has standing to request such an order, (2) whether a payment to the IRS out of a Chapter 7 estate constitutes a voluntary payment that may be applied however the Chapter 7 debtor chooses, and (3) whether a bankruptcy court should use its equitable powers to order that payments to the IRS out of a corporate debtor's Chapter 7 estate be applied first to reduce trust fund tax liability. For the reasons stated herein, this Court holds that the Debtor lacks standing to seek such order, and, even if it had standing, the payments to the IRS are involuntary and may be applied at the IRS's discretion. Furthermore, there are no equitable reasons for this Court to direct allocation of payments to the IRS.

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 26, 1983. Thereafter, Richard J. Stahl (the "Trustee") was appointed trustee to liquidate the estate and pay creditors' claims. On July 8, 1988, the IRS filed a proof of claim for trust fund and non-trust fund tax liabilities. Trust fund taxes are those owing by the Debtor's employees that the Debtor withholds from its employees' wages and holds in trust for the United States. Non-trust fund taxes are those due from the Debtor itself, such as corporate income taxes and penalties on trust fund taxes.

· The Debtor objected to the proof of claim filed by the IRS and filed an amended proof of claim on July 13, 1988 on behalf of the IRS asserting that the Debtor owed an amount in excess of that which the IRS claimed[1]. On October 10, 1989, a hearing was held on the IRS's proof of claim and the Debtor's objection thereto. This Court overruled the Debtor's objection to the claim by the IRS. Thereafter, the Debtor filed the subject motion.

The amount in the estate available for distribution to the IRS is insufficient to satisfy both the Debtor's trust fund and non-trust fund liabilities.

Employers are required by the Internal Revenue Code (the "IRC") to collect, by deducting and withholding from their employees' paychecks, employees' personal income, unemployment and social security taxes, 26 U.S.C. § 3102(a), and are responsible for remitting such withheld taxes to the IRS. 26 U.S.C. §§ 3102(b), 3403. Although employers are to withhold such taxes as wages are paid, they are not required to remit such taxes to the IRS until the end of each quarter. See 26 C.F.R. §§ 31.-6011(a)–1(a)(1) and 31.6011–4 (1977). Because section 7501 of the IRC provides that the withheld taxes "shall be held to be a special fund in trust for the United States," 26 U.S.C. § 7501, such taxes are commonly referred to as "trust fund taxes." *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978). All federal taxes other than trust fund taxes, such as employers' federal income taxes, are commonly referred to as "non-trust fund taxes."

If an employer fails to remit to the IRS its trust fund taxes, the IRS suffers a loss because the employees from whose wages the taxes are withheld are credited with those amounts as if they in fact had been remitted by the employer to the IRS. 26 U.S.C. § 31(a); *see Moore v. United States*, 465 F.2d 514, 517 (5th Cir.1972).

 To ensure compliance with this requirement, the IRC imposes personal liability on each officer and employee responsible for the collection and payment of trust fund taxes who "willfully fails to collect ... and pay over such tax, ..." 26 U.S.C. § 6672. These officers and employees are commonly referred to as "responsible persons." *Slodov*, 436 U.S. at 245 n. 7, 98 S.Ct. at 1784 n. 7. Responsible persons are generally those, such as the treasurer or other officer or employee with

---

**1.** The IRS's proof of claim was in the amount of $32,491.46. The amended proof of claim filed

by the Debtor was in the amount of $57,785.24.

checksigning authority, who have the power to determine which creditors will be paid first. *Gephart v. United States*, 818 F.2d 469, 473 (6th Cir.1987). Where the responsible person makes a deliberate choice to intentionally not pay the IRS, such person has acted willfully. *Godfrey v. United States*, 748 F.2d 1568, 1577 (Fed.Cir.1984). Although responsible persons thus serve, in essence, as guarantors of the employer's trust fund tax obligations, section 6672 of the IRC treats the employer and the responsible persons as co-debtors and allows the IRS to proceed against either of them in the order best suited to collect the unpaid tax. *United States v. Pomponio*, 635 F.2d 293, 298 (4th Cir.1980).

The IRS contends that an insolvent Chapter 7 bankrupt corporation, such as the Debtor, lacks standing to request a bankruptcy court to order that amounts owing to the IRS be allocated first to trust fund tax liability and the remainder, if any, to non-trust fund tax liability.

In *Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir.1985), the United States Court of Appeals for the Fourth Circuit, by relying on the "party in interest" analysis used by courts in interpreting 11 U.S.C. § 502(a), has provided some guidance in determining certain Chapter 7 standing issues. Section 502(a) allows a debtor to challenge a claim or interest filed by a creditor if such debtor is a "party in interest." 11 U.S.C. § 502(a). The debtor in *Willemain* was not seeking to disallow a claim as in the case at bar but rather to challenge the commercial reasonableness of a trustee's sale of the debtor's primary asset. The debtor claimed that the asset, which was sold by the trustee for $100,000, was in fact worth $200,000. In affirming the decision of the bankruptcy court that the debtor had no standing to challenge the sale, the Fourth Circuit concluded that the debtor would have standing only if a successful challenge would create an estate with assets in excess of liabilities. The *Willemain* court concluded that even if the debtor's property were sold for $200,000, his liabilities would still exceed his assets. In reaching its decision, the *Willemain* court relied upon *Kapp v. Naturelle, Inc.*, 611 F.2d 703 (8th Cir.1979), which held

that for a debtor to be a "party in interest" to challenge a claim, he must have a pecuniary interest in the estate (*i.e.*, if the debtor is successful in having the claim disallowed, there must be a surplus of assets to be returned to the debtor). *Willemain*, 764 F.2d at 1022 (citing *Kapp v. Naturelle, Inc.*, 611 F.2d 703, 706–707 (8th Cir.1979)); *see also In re Fondiller*, 707 F.2d 441, 443 (9th Cir.1983).

The *Willemain* approach to standing, which extends the applicability of section 502(a) "party in interest" analysis outside the section 502(a) setting, suggests that an insolvent Chapter 7 debtor has no standing to request the allocation of payments to the IRS unless such an allocation would result in the debtor's assets exceeding its liabilities, thus resulting in a surplus to the debtor. If such a surplus would result, the debtor would have a pecuniary interest in the estate, would be a party in interest, and therefore would have standing.

In applying such rule to the instant case, we conclude that the Debtor lacks standing. The Debtor is requesting this Court to allocate funds between two debts owed to a single creditor, the IRS. The debt owed the IRS is a fixed amount and thus the Debtor is seeking to neither increase its assets nor reduce its liabilities. There is no possibility that the Debtor would have a surplus in its estate even if this Court were to grant the Debtor's motion to allocate funds.

■ Even assuming that the *Willemain* analysis does not apply to the instant case, the Debtor lacks standing under generally recognized standing principles. The standing doctrine, derived, in part, from the jurisdictional limitation on federal courts in Article III of the United States Constitution to decide only "cases or controversies," *Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 699–700, 7 L.Ed.2d 663 (1962), requires that a plaintiff have a personal stake in the outcome of a controversy. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975); *see generally* 13 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure

§ 3531 (1984). The plaintiff must suffer an "actual injury redressable by the court." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 39, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). This requirement is meant "to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982); *see also Director, Office of Workers' Comp. Programs v. Perini North River Assocs.*, 459 U.S. 297, 305, 103 S.Ct. 634, 640–41, 74 L.Ed.2d 465 (1983).

The Debtor has not shown, and it cannot show, that it will suffer any harm if this Court denies its motion, or receive any benefit if this Court grants its motion, because it will remain liable in either event for both trust fund and non-trust fund taxes. The Debtor has no personal stake in the outcome of its motion. The real parties in interest here are the Debtor's responsible persons. If the IRS is required to allocate payments to trust fund taxes first, the benefits would accrue solely to the Debtor's responsible persons because their personal liability would be reduced *pro tanto*. A plaintiff "has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others." *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 166, 92 S.Ct. 1965, 1968, 32 L.Ed.2d 627 (1972).

■ Assuming *arguendo* that the Debtor has standing with respect to the subject motion, the payments to be made out of the Debtor's estate are involuntary and, therefore, may be applied at the discretion of the IRS. It is the policy of the IRS to allow an employer who voluntarily makes payments to designate whether such payments should be applied first to its trust fund tax liability. Rev.Rul. 79–284, 1979–2 Cum.

Bull. 83, *modifying* Rev.Rul. 73–305, 1973–2 Cum.Bull. 43, *superseding* Rev.Rul. 58–239, 1958–1 Cum.Bull. 94. Conversely, when a payment is characterized as having been made involuntarily, the IRS generally applies such payment first to reduce the employer's non-trust fund tax liability and, if there is any excess, to reduce trust fund tax liability (thereby reducing responsible persons' section 6672 liability *pro tanto*). IRS Policy Statement P–5–60, reprinted in 1 *Internal Revenue Manual, Administration* (CCH) 1305–15. Because the goal of the IRS is to maximize the amount of taxes collected, it attempts to satisfy non-trust fund tax liabilities first from the employer so that, if the employer has insufficient assets to satisfy both, the IRS has a secondary source of collection (*i.e.*, responsible persons) from which to collect trust fund taxes.

The IRS contends that payments made out of the estate of the Debtor are involuntary and this Court, therefore, should not direct that funds distributed by the Trustee to the IRS be allocated first to the Debtor's trust fund taxes. The Debtor argues that any distribution by the Trustee to the IRS is voluntary because the Debtor voluntarily attempted to augment the IRS's claim by filing an amended proof of claim on behalf of the IRS.

To determine whether a payment should be characterized as voluntary or involuntary, we look to *Amos v. Commissioner,* 47 T.C. 65, 69 (1966), for the definition generally accepted by the courts:

> An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.

Although federal courts have reached different conclusions with respect to the involuntary/voluntary distinction in the Chapter 11 context [2], virtually every court

---

**2.** For cases holding that payments under a Chapter 11 reorganization plan are voluntary, see *In re Lifescape, Inc.,* 54 B.R. 526 (Bankr.D.

Colo.1985), and *In re Tom LeDuc Enterprises, Inc.,* 47 B.R. 900 (W.D.Mo.1984). For cases holding that payments under a Chapter 11 plan

that has considered the issue in a Chapter 7 context has held that payments to the IRS are involuntary. *See In re Vermont Fiberglass, Inc.*, 88 B.R. 41, 43 (D.Vt.1988); *In re 26 Trumbull Street, Inc.*, 96 B.R. 419, 422 (Bankr.D.Conn.1989); *In re Clements Electric, Inc.*, 102 B.R. 101, 102 (Bankr.S.D.Tex.1988); *In re Shreve Steel Erection, Inc.*, 92 B.R. 214, 217 (Bankr.W. D.Mich.1988); *In re R.L. Inge Dev. Corp.*, 78 B.R. 793, 795 (Bankr.E.D.Va.1987); *In re Office Dynamics, Inc.*, 39 B.R. 760, 762 (Bankr.N.D.Ga.1984); and *In re Obie Elie Wrecking Co.*, 35 B.R. 114, 115 (Bankr.N. D.Ohio 1983). Only two courts have held that a Chapter 7 corporate debtor's payments to the IRS are voluntary and both such holdings were overruled. *See In re Frank Meador Buick, Inc.*, 85 B.R. 392 (Bankr.W.D.Va.1988), *rev'd,* No. 88–349–R (W.D.Va. March 16, 1989), *appeal pending,* No. 89–2954 (4th Cir.); and *In re Vermont Fiberglass, Inc.*, 76 B.R. 358 (Bankr.D.Vt. 1987), *rev'd,* 88 B.R. 41, 43 (D.Vt.1988).

In *In re R.L. Inge Dev. Corp.*, 78 B.R. 793 (Bankr.E.D.Va.1987), an officer of the Chapter 7 corporate debtor requested the Bankruptcy Court for the Eastern District of Virginia, Richmond Division, to issue an order directing the IRS to allocate payments first to trust fund liabilities. Such request was denied. The court held that where a bankruptcy court orders that a Chapter 7 debtor's assets be sold and proceeds be applied to claims of lienholders, such order constitutes the necessary judicial proceeding, under *Amos, supra,* to cause the debtor's payments to the IRS to be characterized as involuntary.

Here, the IRS has filed a claim for delinquent taxes in a Chapter 7 judicial proceeding. Hence, under the *Amos* test, any payment to the IRS resulting from such claim is involuntary. *See Amos,* 65 T.C. at 69 ("An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of ... *a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor*") (emphasis added).

In addition, once a debtor files a bankruptcy petition, the property it possesses, as well as any funds acquired from such property, passes to the trustee. 11 U.S.C. § 541(a). The Chapter 7 debtor is no longer free to deal with its property or to direct the trustee on how to distribute payments to creditors out of the estate. Here, the Debtor openly acknowledges that it has no control over the estate. *See Debtor's Memorandum in Support of its Motion to Direct Application of Payments* at 5. Hence, payments made out of the Debtor's estate cannot be characterized as voluntary.

The Debtor's contention that by filing an amended proof of claim on behalf of the IRS for the purpose of augmenting the IRS's claim, it transformed any subsequent payment to the IRS into a voluntary payment, is without merit. Because the amount of the IRS's original claim for both trust fund and non-trust fund taxes could not be satisfied out of the Debtor's estate, the Debtor, by attempting to increase the IRS's original claim, did not take any action that would legitimately result in any increase in the amount to be received by the IRS.

This Court finds no reason here to deviate from the well established rule that payments made to the IRS out of a Chapter 7 corporate debtor's estate are involuntary.

■ The Debtor contends that this Court should exercise its equitable powers under 11 U.S.C. § 105(a) to order the IRS to apply payments first to trust fund taxes. Section 105(a) provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). The Debtor argues that such powers should be used to encourage the fresh start policy of the Bankruptcy Code.

The Debtor's contention is not persuasive. In a Chapter 7 liquidation of a corporate debtor, the fresh start policy is

---

are involuntary, *see In re DuCharmes & Co.,* 852 F.2d 194 (6th Cir.1988) (*per curiam*); *In re Technical Knockout Graphics, Inc.,* 833 F.2d 797 (9th Cir.1987); and *In re Ribs–R–Us, Inc.,* 828 F.2d 199 (3d Cir.1987).

inapplicable. First, the Debtor has been liquidated and ceases to exist as an entity. *See In re Vermont Fiberglass, Inc.*, 88 B.R. 41 (D.Vt.1988). Second, the Debtor is a corporation and does not receive a discharge. *See* 11 U.S.C. § 727(a)(1). Finally, because the Debtor filed a petition under Chapter 7 and not under Chapter 11, there are no reorganizational goals to promote. *See In re Looking Glass, Ltd.*, 113 B.R. 463 (Bankr.N.D.Ill.1990); *see also United States v. Energy Resources Co., Inc.*, —— U.S. ——, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990) (wherein the Supreme Court held that a bankruptcy court has the authority under 11 U.S.C. §§ 105(a) and 1123(b)(5) to order the IRS to treat tax payments made by a Chapter 11 corporate debtor as trust fund payments where such court determines that such designation is necessary for the success of a reorganization plan).[3]

In conclusion, the Debtor has failed to establish any exceptional circumstances or equitable reasons warranting this Court to grant its motion to direct the allocation of payments to the IRS under 11 U.S.C. § 105. This Court further notes that the equities in this case favor the government. The basic Congressional purpose behind section 6672 of the IRC is to effect and ensure the collection of governmental revenue. *See In re Ribs–R–Us, Inc.*, 828 F.2d 199, 203 (3d Cir.1987). To that end, the IRC imposes personal liability on responsible persons who willfully cause the diversion of employees' withholding taxes from the IRS to satisfy the employer's other creditors. This policy is so established that a responsible person cannot avoid section 6672 liability even by filing personal bankruptcy. *See* 11 U.S.C. § 523(a)(1)(A) (providing that "[a] discharge ... does not discharge an individual debtor from any debt ... for a tax ..."). Such policy would be circumvented if this Court were to grant the Debtor's motion. By applying payments first to satisfy trust fund tax liability, this Court would be reducing the personal liability of responsible persons. The Debtor acknowledges that by requesting this Court to order the IRS to apply payments received from the Debtor's estate first to trust fund taxes, it is attempting, at least in part, to reduce potential personal liability of its responsible persons. *Debtor's Memorandum in Support of its Motion to Direct Application of Payments* at 2. The IRS has the duty to properly enforce applicable law and should not be prevented under section 6672 to seek recovery from responsible persons if those persons acted willfully. Because corporate liquidation under Chapter 7 has the practical effect of discharging the corporation from all unpaid tax liabilities, recourse to responsible persons is the only means of enforcing collection of the taxes. A debtor is "not free to abuse this system by designating its payments in a way that benefits only its responsible persons, ..." *In re Technical Knockout Graphics, Inc.*, 833 F.2d 797, 803 (9th Cir.1987).

Accordingly, for the reasons stated herein, the Debtor's motion to allocate payments to the IRS is denied. An appropriate order will be entered.

---

**3.** For example, it may be necessary, in order to retain essential officers of a Chapter 11 debtor, that a reorganization plan propose to satisfy trust fund taxes first. None of those circumstances is present in a Chapter 7 liquidation. Accordingly, *Energy Resources*, which involved a Chapter 11 reorganization, is distinguishable from the Chapter 7 case at bar.